E. M. STRONG et al., Respondents, v. HERMAN
SPERLING, et al., Appellants.

St. Louis Court of Appeals.  Submitted on Briefs June 6, 1918.  Opinion
Filed July 12, 1918.

1. **HIGHWAYS: Roads and Highways: Closing up Road: Permissive Use by Public: Burden of Proof: Injunctions.**  In an action for a mandatory injunction to restrain the owners from closing up a road or driveway running through a farm, with gates, where the testimony shows that the road had been traveled by the public for more than sixty years before the date of the trial, *held* that the burden was on the owners to show that the public's first use of the road was permissive, and in this case there was no testimony that its first use was permissive.

2. ———: ———: **License: Permissive Use by Public: Revocable at Will.**  Where the public's first use of such road or driveway is permissive or by mere license, the permission or license was revocable at will.

3. ———: ———: **Adverse Use by Public: Sufficiency of Evidence.**  And, *held* that the evidence of user here is of such a character as to make it adverse to the owner: a user by the public as of right.

4. ———: ———: ———: **Easements: Statutes.**  Under the Acts of 1913, p. 658, section 15, relating back to the Acts of 1887, p. 257, section 57, providing that no lapse of time shall divest the owner of his title to his land unless, in addition to the use of the road by the public for the period of ten consecutive years, there shall have been public money or labor expended thereon for such period, failure to expend public money or perform labor on the road for that period of time will not affect an easement acquired by the public in such land, where the right by prescription had been established to the road twenty or thirty years before the act of 1887 went into effect.

5. ———: ———: **Easement of Public in Road: Use of Other Roads Immaterial.**  The fact that the public had other roads which they might have used, although they were somewhat longer than the one in dispute, is immaterial, if they had a right to use this particular road.

6. ———: ———: **Adverse Use by Public: Injunctions: Grounds.**  Where a road has been in use by the public for more than sixty years, and there is no pretense that it was originally used under

license or by permission, and the character of the use was such as to impart notice to the owner of the estate, etc., the owner will be enjoined from erecting gates across the road, although the gates are so adjusted that they can be readily opened and are never locked, etc., where it was a road over which the public generally had a right of passage.

7. **APPELLATE PRACTICE: Equity Cases: Review of Evidence.** In an action in equity, the appellant court will review the evidence and determine the case on the evidence, and is not bound by the finding of facts by the trial court, that finding being of no force in an equity case.

Appeal from the Circuit Court of Cape Girardeau County.—*Hon. Frank Kelly,* Judge.

AFFIRMED.

*Edw. D. Hays* for appellant.

(1) (a) In equity cases the appellate court will not be bound by the chancellor's finding of facts, but will review the whole evidence and pronounce the proper judgment. Fitzpatrick v. Weber, 168 Mo. 562-572. (2) (a) A highway may be established either: (1) By prescription, user or recognition; (2) By statute or statutory proceedings in the exercise of the right of eminent domain; or (3) By dedication. 37 Cyc. 17. (3) (a) As a general rule before a highway can be established by prescription, it must appear that the general public, under a claim of right, and not by mere permission of the owner, used some defined way without interruption or substantial change, for a period of twenty years or more. The use must be under claim of right. Where the use is merely permissive and not adverse, there is no basis on which a right-of-way by prescription can rest. For this reason some of the courts have held that the use of vacant, uninclosed land for twenty years by the public in passing and repassing will give them no prescriptive rights. The public cannot acquire a prescriptive right to pass over land generally, and where a highway is claimed by prescription, a certain

and well-defined line of travel must be shown. Elliott, Roads and Streets, Ch. vl., p. 137. (b) It has been held that a highway cannot be established by prescription over vacant and uninclosed land. But the contrary has also been held. Doubtless stronger evidence would be required in such a case to show that the use was adverse and not without the implied consent of the owner. The presumption would be that the use was permissive. And the use would have to be confined to some definite tract and not distributed over a number of tracts occupying a wide strip of land or shifting from one line to another. Lewis on Eminent Domain, sec. 486; Lieber v. People, 81 Pac. 270; Friel v. People, 35 Pac. 576; Ottawa v. Yentzer, 160 Ill. 309; O'Connel v. Railroad, 184 Ill. 308; Bethel v. Bruett, 215 Ill. 162; Engel v. Hunt, 50 Neb. 358; Petterson v. Waske, 45 Wash. 307. (4) (a) The mere use of a road by the public for however long a time, will not constitute it a public road. Commonwealth v. Kelley, 8 Va. 632; Dicken v. Liverpool S. & C. Co., 41 W. Va. 511. (b) Mere user by permission of the landowner of a highway over his land cannot establish a right to a public way, unless such user is shown to have been under a claim of right and not simply by permission. Sharp v. Mynatt, 69 Tenn. 375. (c) Where it appears that land has been used by the public as a road, but that no claim has been made by the county or the public to the exclusive use of such land as a road, and it does not appear that such use was otherwise than permissive, no prescriptive right is acquired in the lands for the purposes of a road. Cunningham v. San Saba County, 1 Tex. App. 480; Cunningham v. San Saba County, 20 S. W. 941. (5) (a) The mere acquiesence of the owner of wild, uninclosed timber land in public travel over it, for more than twenty years, is not sufficient to give the public a title to any part of it. Fox v. Virgin, 5 Ill. App. 515. (b) The public cannot acquire any right to a road over vacant and uninclosed lands by use alone for twenty years.

Fox v. Virgin, 11 Ill. App. 513. (c) Mere travel by the public over uninclosed private land in a tortuous course, on which no substantial improvements have been made by the public, will not constitute a highway by prescription, since such travel does not show that the land is not so used by permission of the owner. Town of Brushy Mound v. McClintock, 150 Ill. 129. (6) (a) Mere user of another's land by the public as for a highway is not sufficient of itself to establish a highway by prescription. The user must be adverse and hostile to the rights of the owner, and under color or claim of right so to use the land. A user by license or permission of the owner of the land sought to be impressed with a public easement of travel is not adverse, and affords no basis for prescription, where the landowner does not consent to the user of his land by the public as of right. 37 Cyc. 25. (b) Where the owner of property never ceased to exercise dominion over a road on the property, the public could acquire no precriptive right thereto. Jones v. Phillips, 59 Ark., 35; Jones v. Phillips, 26 S. W. 386. (7) (a) The public cannot acquire a prescriptive right to pass over a tract of land generally; in order to create a highway by prescription the user must be confined to a definite and specific line or way. This is especially true where the *locus in quo* consist of wild or uninclosed lands. 37 Cyc. 22. (b) The public cannot acquire a prescriptive right to pass over a tract of land generally, but it must be confined to a specific line or way. Gentlemen v. Soule, 32 Ill. 271; Bryan v. East St. Louis, 12 Ill. App. 390. (c) In order to establish a public highway by prescription over uninclosed lands, such use must have been confined to a definite and specific line, and must have been adverse to the owner, in the absence of any act by him from which it can be fairly inferred that he intended a dedication to the public. City of Ottawa v. Yentzer, 160 Ill. 509. (d) To establish a road by twenty years uninterrupted, adverse enjoyment, there must be a certain well-defined line of travel over the entire route for all that time. South Branch Co. v. Parker, 41 N. J., 489.

finding of facts, is to the effect that no public money or labor has been expended on the road in question within the last ten years; in fact, it does not appear that any public money or labor have ever been used in the maintenance of the driveway in controversy. Therefore plaintiffs cannot rely on that method of having said road declared a public highway. Sec. 10446, R. S. 1909; Copeland v. Pyrtle (Mo. App.), 199 S. W. 992.   (b) To make the use of land for a road by the public adverse as to the party who holds the papers title, some act must be done showing a claim of right, such as working the road, attaching it to the road district, or some other act of the proper authorities recognizing it as a highway. State v. Joyce, 19 Wis. 90.   (c)   The fact that a road claimed by prescription had never been worked, repaired or taken control of by the public or the overseers is an important element of evidence against a claim of right, though not conclusive. Sharp v. Mynatt, 69 Tenn. 375.   (d)   The fact that a road has not been repaired by the authorities may be evidence tending to show that the corporation does not regard it as a highway. This will not be the case, however, if it appears from the nature of the ground that the road has needed no repairs. Town of Lewiston v. Proctor, 27 Ill. 414. (e)   A road over uninclosed woodland is not shown to be a highway by proof of user during the prescriptive period, without evidence that the public authorities at any time during such period worked or repaired it. Harriman v. Howo, 28 N. Y. Supp. 858.

*A. M. Spradling* for respondents.

(1)   The continued, open, adverse use for the purpose of a public road for the period of some forty to sixty years is sufficient to establish the easement of the respondents and the public thereon for the uses and purposes of a public road. Patton v. Forgey, 171 Mo. App. 7; Leiweke v. Link, 147 Mo. App. 26; Lee v. Railroad, 150 Mo. App. 182; Sikes v. Railroad, 127 Mo. App. 321; Berry v. Railroad, 124 Mo. App. 436; Dowe v. Railroad, 116 Mo. App. 558; Scruggs v. Rail-

road, 69 Mo. App. 298.    (2) The statute of 1887, section 9694, Revised Statutes 1899, providing that no lapse of time shall divest the owner of his title to the land unless, in addition to the use of the road by the public for a period of ten consecutive years there shall be public money or labor invested, does not apply in this case, because the rights of respondents and the public had acquired before the enactment of this statute.    Patton v. Forgey, 171 Mo. App. 6; Sikes v. Railroad, 127 Mo. App. 326.    (3) If the nuisance causes special or peculiar injury to an individual, different in kind and not merely in degree to the injury of the public at large, and the injury is substantial in its nature, the individual may have his civil remedy.    Patton v. Forgey, 171 Mo. App. 8; Rude v. St. Louis, 93 Mo. 408; Bailey v. Culver, 84 Mo. 538. (4) The fact that the road has been changed from its original place will not prevent the easement from attaching.    Barry v. Railroad, 124 Mo. App. 438.

REYNOLDS, P. J.—This is an action for a mandatory injunction to restrain defendants from closing up a certain road or driveway with gates.

The defendants own a farm in Cape Girardeau County, located on the northwest quarter of section 13, township 31, north, range 11 east.    A road or driveway passes in a general north and south direction through this farm.    The lands of defendants lie on either side of this road, the main body to the east, and consist of cultivated fields that have long been inclosed by fences.    To the west of the road the land owned by defendants, prior to the occurrences here involved, was an uninclosed nine-acre field and timber tract.    The field is at the extreme southwest corner of defendants' farm and west of the timber.    It is triangular in shape, the apex to the north and near the north end of defendants' land, and the base is to the south and on a line corresponding to the center line of section 13, the southwest corner of this triangle being at the quarter section corner between sections

13 and 14. Between this field and the main body of the defendants' lands was the woodland. This suit was instituted on April 2, 1915, and tried in September of that year. A short time before that, in March of that year, the defendants extended fences across the south end of the nine acres and of the woodland, to their fence east of these tracts, and which fences are to the east of the disputed driveway, constituting the eastern boundary of the driveway, and at the point where this cross fence intersects the driveway, defendants placed a gate. Defendants also constructed a fence along the west line of the nine-acre field and the west line of what had been the woodland or timber, to where the fence intersected with this driveway, nearly at the northwest boundary of the tract, and there they erected another gate; that is to say, defendants, in March, 1915, erected gates where the two fences, one running east along the south of this nine-acre tract and the woodland, and the other running north along the west boundary of that tract and the woodland crossed or intersected this driveway. The object of this suit is to compel defendants to remove the gates and to refrain from erecting others, or otherwise obstructing the driveway.

On the part of plaintiffs, there was evidence from a number of witnesses, to the effect that this so-called driveway had been in use for from forty to sixty years, not exactly in the identical location in which it is now but practically along the same route. Originally it appears to have been along the crest of a ridge, then was moved further down and toward the east but still practically near the crest of the rise or hill. After this driveway leaves the lands of the defendants, it runs south, in a generally southerly direction, through lands now owned by a Mr. Nagel, and there opened into a private roadway running east and west between the lands of Mr. Nagel and those of plaintiff Strong, the lands of the plaintiffs being immediately south of the Nagel lands.

The testimony of plaintiff Strong was to the effect that for many years he had used this driveway over the Nagel lands and the Sperling lands, for access to the post office, church and school house, located at Burfordville, a village in Cape Girardeau County a short distance west and north of defendant's property, and by this route about a mile and three-quarters or two miles from Strong's farm, and that this road was the most direct route and the shortest route between his place and Burfordville, to which place he had always carried over this road, backward and forward, grain, provisions, etc., general marketing, in short. There was evidence that there were private roads which were accessible to the plaintiffs but not in as direct or sharp a line as by this disputed road, if they desired to reach Burfordville. According to the testimony of the county surveyor, the distance by the disputed road from plaintiffs' lands to Burfordville is about a mile and three-quarters, while over the other roads it would be about two and a half miles. Other witnesses testified that by this latter route it would be about four miles, making it about two and a half miles further than by the disputed route. It appears that defendants had always had a fence along the east line of this disputed road and between it and their cultivated ground. It is also in evidence that from time to time as defendants took in part of their woodland, they pushed this fence further to the west. As to this distance, the evidence varies. The general trend of it, however, is that the fence was moved from ten feet to at least 150 feet along a considerable portion of it, although not along all of it. The road or driveway in dispute, as traveled, appears to have been something like sixteen feet wide and ran originally along the edge of the timber or woodland owned by defendants and through that and, as before said, as defendants from time to time took in part of this woodland they pushed the fence over to take in the cleared land. There is no evidence to show that any one ever objected to this change, and there is evidence that defend-

ants, after pushing their fence along, and in fact cultivating a part of what had been the roadway, made no objection and interposed no obstacle to the travel by the public over the road along the new route and had never put any fences across it until they included in their fences the nine-acre field in the southeast corner of their tract and what had before then been woodland. With the fences in place, however, it appears that defendants made no objection whatever to the public using this driveway, necessitating, however, the opening and closing of gates at either end of defendants' premises. It appeared in evidence that the fences had been pushed out along this roadway so as to take in part of the woodland fifteen or sixteen years before the trial of the case and since 1887. While the witness who testified to this would not be definite as to it, he testified that it was within the last nineteen years. After defendants had moved the fences along the east line of this driveway, as before said, they took in, as in their cultivated land, the ground which had formerly been used as the driveway, but as testified to by one or more witnesses, it is very plain to be seen in the field where the road had been. Most of this fence had been moved to the west far enough to include the old road, and the old road, a witness testified, is now on the inside of the field. This, the witness testified, was clear through the west side of the defendants' field. This witness was the owner of the farm immediately south of that of the defendant's and north of the premises of plaintiff's, and he had resided there some nineteen years, and testified as to his knowledge of the situation during that time.

A number of witnesses, men over sixty, one over seventy-four years of age, testified that they had lived in that vicinity all their lives and that this road had always been there and had been used by the whole neighborhood and by the public generally. As far as they were able to say, it was in practically the same position as now throughout all these years; if its

location was changed, it was so slight that they did not notice it.

The defendant, Herman Sperling, testified that he had put the fences across the road because he had woods in there and a spring below and had connected the two fields so that he could let his hogs have access to the water from the spring, which was at the foot of the bluff in the timber land. He wanted to keep his hogs off of the cultivated land and he fenced this in. That defendant testified that the driveway or road in dispute, nineteen years ago, as. it crossed this farm, ran on what is now the inside of his field, the roadway running to the west of the farm, and within nineteen years he had moved his fence over to take in all this driveway, and that all the roadbed which was traveled nineteen years ago is now inside his cultivated field and that he had set this fence far enough over to include the road, that is to say, the greater part of it, although there are parts of the road where it had always been. He had set over the north end of the fence some seventeen years ago and the south end about eighteen years ago, and while all the intermediate space, as we understand it, between the two ends, was not set over, the greater part of it was; had set the fence over from four to five rods, and the old roadbed in use nineteen years ago is from four to five rods east of the roadbed now used, and that, said defendant was the case all through this field.

There is some testimony to the effect that the plaintiff, and perhaps others, on a few occasions, at their own expense, had done some work on the road in the way of removing rocks, etc., but the evidence of two witnesses, gentlemen who had been road overseers of the district, testified that no public money or labor had ever been put upon it during their terms of office; that whatever labor had been done was with private money and private labor and they referred to it as a private road.

The determination of the case, in our opinion, turns upon the solution of the question as to whether

the use by the public of this driveway for the number of years it has been in use, was adverse to the claim of defendants and those under whom they claim, or was permissive; if it was adverse, plaintiffs have made out their case, and the judgment of the circuit court should be sustained; if it was merely permissive, and plaintiffs and the public were merely, in a sense, licensees, then the defendants, as owners, could revoke the license at any time, and that without rendering them liable to action. As to the latter, there is no testimony that its first use was permissive; and if it was, the burden was on defendants to show that. [Anthony v. Kennard Building Co., 188 Mo. 704, 87 S. W. 921.] If permissive, or by mere license, the permission or license was revocable at will. [Pitzman v. Boyce, 111 Mo. 387, 19 S. W. 1104.]

In Brinck v. Collier, 56 Mo. 160, the Supreme Court held that to constitute a valid dedication of land to the public, there must be a clear intention on the part of the owner to dedicate. This intention may be established in various ways, as one, when done as provided by statute, and again, by acts or declarations *in pais*, which constitute satisfactory evidence of the design, and there must be an acceptance of such dedication by the public, either by user for the length of time, more or less, according to circumstances, or by its adoption by the public authorities. It was held in that case that, although the public had for many years used a certain alley lying on defendant's property, by passing to and fro over it, that fact did not constitute a dedication of the alley, or an acceptance of the dedication by the public; that the use by the public was not adverse but merely permissive, the acts of the owner of the fee showing that he retained not only ownership but control of this private alley, paying taxes on it, improving it and doing other acts inconsistent with the dedication of it to the public.

In Pitzman v. Boyce, supra, plaintiff, the owner of a lot of ground, constructed a drain in which he and others afterwards put pipes to drain their lots into

a sinkhole on the premises of the defendant. This had been done and a structure or chimney raised above the inlet to this natural drain under the premises of the defendant so as to keep mud and debris from falling into it. No one had ever asked the consent of the owner of the premises to do this work, although the owner and her successors knew that the chimney had been built on her lot for the purposes thereof and that the drain and sewer pipes had been laid from plaintiff's premises into it. All that the owner ever said about it was, when in a conversation with plaintiff about the use of her property, and that he and others were draining into it, she said, "I hope you won't injure, it." Under this state of facts, our Supreme Court held, commencing at page 392, that the question first to be determined is whether the use was really adverse to the owner or was merely permissive in its character. "If permissive in its inception, then such permissive character being stamped on the use at the outset will continue of the same nature, and no adverse user can arise until a distinct and positive assertion of a right hostile to the owner, and brought home to him, can transform a subordinate and friendly holding into one of an opposite nature, and exclusive and independent in its character (citing cases). It is true that the cases just cited relate to adverse possession in the ordinary way; but the principle is the same in either case. Though the Statute of Limitations has no reference to easements, yet where a party has enjoyed an easement for such length of time as to confer title to land from the true owner to a disseizor, this adverse enjoyment will in law establish the right to the easement as against the owner of the *serviente* state (citing cases)." The holding of the court was that the right claimed by plaintiff was to be regarded as merely permissive; in short, a license, revokable even after it has been executed and the money expended.

Here, as said, we have no testimony whatever that the first use was merely permissive. We hold that the evidence of user here is of such a character

as to make it adverse to the owner; a user by the public as of right.

In Missouri Institute for the Education of the Blind v. How, 27 Mo. 211, an action in trespass for damages for an alleged unlawful entry upon certain premises, among other defenses pleaded was that the premises were part of the public street, dedicated to public use prior to the alleged trespass by plaintiff and that the public had a right of way over the premises. In that case it is said (1. c. 216): ''The vital principle of a dedication is the intention to dedicate; and whenever this is unequivocally manifested, the dedication, so far as the owner of the soil is concerned, has been made.'' The Court quotes approvingly from 3 Kent Comm. 451, to the effect that, ''If there be no other evidence of a grant or dedication than the presumption arising from the fact of acquiesence on the part of the owner in the free use and enjoyment of the way as a public road, the period of twenty years, applicable to incorporeal rights, would be required as being the usual and analogous period of limitation.'' And Angell on Highways, 116, is referred to as citing an American case as holding that, ''without some clear and unequivocal manifestation of an intention to dedicate, dedication would not be presumed until after the lapse of twenty years; and that this seems to be the view more generally taken by the American courts.''

In State v. Young, 27 Mo. 259, it is said (1. c. 260): ''When use alone is relied on as evidence of a dedication of a right of way to the public, disconnected with any act of the owner showing an intention to dedicate, it must continue the length of time necessary to bar an action to recover the possession of the land.''

In State v. Culver, 65 Mo. 607, the defendant was indicted for obstructing a public road by building a fence across it. The case really turned on the question of abandonment. The evidence tended to show that the road ceased to be used by the public and had been abandoned for more than ten years as a public road before the defendant erected a fence. It had been

established under an act of the Legislature, approved March 14, 1859, when the defendant, in 1873, built a fence across it. Our Supreme Court held that when the road was located and established in pursuance of the act of the Legislature, the right of the public to use it as a road became vested; that the easement thus acquired over the land upon which it was located could only be defeated by a discontinuance or vacation of the road by the county court on proper proceedings instituted for that purpose, or by repeal of the law creating it, or by nonuser of the road by the public for such length of time as in legal contemplation would amount to an abandonment. It was not pretended that it had been vacated as provided by statute, when it ceased to be of public use, nor was it pretended that the law had been repealed. If the public lost the right to use it, it was by nonuser, and that suggested the question for determination in the case, as to whether nonuser of the road, in which the public had acquired a right to use as such for ten years, amounted in all to an abandonment of the easement that would justify the owner of the land through which it passes to fence it up, without subjecting himself to prosecution for obstructing a public highway. The court held it would be necessary, to raise a presumption of abandonment by the public of the road after it had once acquired that right, for a period of twenty years to have elapsed to show abandonment. That case refers to approvingly and follows State v. Young, supra, and Missouri Institute for the Education of the Blind v. How, supra.

A case following that, with respect to the question of right to a road by user, was passed on by our Supreme Court in State v. Walters, 69 Mo. 463. Our Supreme Court sustained the action of the trial court in giving an instruction, that if the jury found that the road had been used and traveled as such by the public and had been claimed, recognized, used, worked and repaired when necessary as a public road for a period of ten years or more before the alleged obstruction, such acts of use and claim by the public

would establish a legal road. And the Supreme Court .sustained the action of the trial court in refusing an instruction, to the effect that unless the jury believed the road had been used as such by the public continuously and uninterruptedly by claim of right adverse to the owner for a period of twenty years or more, the owner being in continuous possession of the land, defendant should be held not guilty of having obstructed a public road, the offense with which he was charged.

In State v. Wells, 70 Mo. 635, where the defendant was indicted for obstructing a public road, the court said (l. c. 637): "Even if we concede that twenty years' use of a road by the public, is necessary to confer an easement, the testimony is ample for that purpose, one of the witnesses testifying that there had been a road on the land now owned by defendant for twenty years." Citing and referring to State v. Culver, supra, and State v. Walters, supra, our Supreme Court said that "ten years adverse possession, occupancy and use of the road by the public would be sufficient, if acquiesced in by the owner, to vest in the public an easement in the road and cause it to become a highway."

In Zimmerman v. Snowden, 88 Mo. 218, it is held that the road having been used, known and recognized as a public highway for a period of over twenty years, is sufficient to establish it as a public road, and that in determining this question, the fact that travel, for the most part, departed from the real location to avoid a hill, was not controlling. "In determining what will constitute a sufficient use," said the court (l. c. 221), "we must keep in view the condition of the surrounding lands and their state of improvement." It was held that there had been a sufficient user to make it a public road.

In Anthony v. Kennard Building Co., 188 Mo. 704, 87 S. W. 921, it is held that an easement lies only in grant, although evidence to establish it is not necessar a deed, for an easement may have existed for such

a length of time and under such circumstances that the law will presume a grant. "This," says the court, "is what is meant by an easement established by prescription." It is further held that where the evidence shows the use of the privilege for a length of time prescribed by the Statute of Limitations for acquiring land by adverse possession, and that use was adverse and under a claim of right, with the knowledge of the landowner, the right to an easement is established; and that notice to the owner of the use, and of the character of the use, and of the adverse claim is not necessary; that that may be inferred from the circumstances, if they are sufficient to justify the inference; and where there has been a continuous use for the prescribed period, of the land in which an easement is claimed to exist, under a claim of right, with the knowledge of the owner, the law will raise the presumption of a grant, unless the owner can show that the use was by permission, and then the burden is on the owner to show the permission; that there are four essential facts to be proven to establish an easement by prescription: "First, user for the prescribed period; second, that the user was adverse; third, that it was under claim of right; fourth, notice to the owner, of the user, and of its character, and of the claims of right."

In Laclede-Christy Clay Products Co. v. City of St. Louis, 246 Mo. 446, 151 S. W. 460, it is held that the use of a road for ten years, with the acquiescence of the owner, makes it a valid road.

These are the principal cases which we have found and to which we are referred as arising and decided by our Supreme Court.

Turning to the decisions of the Courts of Appeals, we find all of them in line with the above holdings of our Supreme Court.

In Autenrieth v. St. L. & S. F. Ry. Co., 36 Mo. App. 254, an action against the railroad company defendant, for obstructing a highway, it appeared that

the road in question had been used for many years, and the only question was as to the character of the use. The court held that the use was under a license from the owner of the fee, over whose land it passed, and the fact that the plaintiffs and their grantors used the road, and that the public was in the habit of traveling it, would not be sufficient to vest either in the plaintiffs or the public a right to easement, whereas if the use by the plaintiffs and the public was adverse, continuous, and as a matter of right, for the period of ten years prior to the building of the defendant's railroad, then this road was either a public highway or a private road belonging to the plaintiffs. The court held that that was a question of fact for the determination of the jury.

In a concurring opinion, Presiding Judge ROMBAUER held that under the decision of the Supreme Court in Brinck v. Collier, 56 Mo. 160, the evidence in the case was insufficient to show that the road in question had become a highway by adverse use on the part of the public, but at the same time he was of the opinion that it was sufficient to show a private easement of way in favor of plaintiff and those under whom he claims, and that the defendant was liable for the obstruction of it.

In Dow v. Kansas City & S. Ry. Co., 116 Mo. App. 555, 92 S. W. 744, it was held that a road used and traveled by the public for more than ten years is a public highway which a railroad is not required to fence where its right of way crosses the highway. It did not appear that the road had ever been worked by the county authorities, but this, our court held, was an immaterial circumstance to disprove it was a public highway, if the public at large had acquired by prescription the right to travel over it and were exercising the right. It was further held that the plaintiff, having established by his own testimony a use by the public for a number of years, there should have been a directed verdict for the defendant.

In Berry v. St. Louis & S. F. R. Co., 124, Mo. App. 436, 101 S. W. 714, the court held that it appearing that the road which crossed the right of way of the defendants, had been used and travelled by the public for more than ten years, the public had a right to it by adverse possession. It is further there said that the fencing of a part of the originally traveled road, and moving it 150 or 200 yards south, was not an act hostile to the right of the public to the road but, as a matter of fact, as appeared by the evidence, was done in recognition of such right, and with the intention that the road as changed should be used by the public as it had been theretofore, and that this change in the road did not interfere with the running of the Statute of Limitations in the public favor.

In Sikes v. St. Louis & S. F. R. Co., 127 Mo. App. 326, 105 S. W. 700, the question was as to whether the railroad crossing at which stock had been killed, was a public road; if it was a public road, either *de jure* or *de facto*, the railroad was not required to fence across it. Analyzing the testimony in the case the court found that it was sufficient to show that the road was a public road. Judge NORTONI, who wrote the opinion of our court, has entered into a very elaborate analysis of the Act of 1887, now section 10,446, which was section 9694, Revised Statutes 1899, and is now section 15, of the Act approved April 14, 1913 (Laws 1913, p. 658), adopted as a substitute for the former road laws of the state. The court there held that as the right of the public to the use of the road had accrued for more than ten years, in fact more than twenty years, prior to the enactment of the Law of 1887, that that law did not apply.

In Leiweke v. Link, 147 Mo. App. 19, 126 S. W. 197, it was held, in an action to restrain the use of a private way across plaintiff's land, that the evidence was insufficient to show that the use of the road had begun or continued under a license from the owners of the land so as not to become adverse, and that after the year 1847, when the limitation period of actions

to recover real property was reduced from twenty to ten years, the public might have acquired an easement by ten years open, adverse and uninterrupted use under a claim of right. It was also held in that case that the Act of 1887, then section 9472, Revised Statutes 1899, did not act retrospectively and did not effect rights to a road that had been traveled for forty years before its enactment, and it was further held that a private way may be acquired by prescription, and where the defendant and his ancestors, occupying the farm now owned by him, had used a way along plaintiff's land as appurtenant to their farm for three generations without objections or interruption, and it does not appear that the use was under a license from the owners of the land, the defendant had an easement in it as a way and cannot be restrained from using it.

In Lee v. St. Louis & S. F. R. Co., 150 Mo. App. 175, 129 S. W. 773, it is said that prior to our statute, that is the statute of 1887, it had been decided in many cases that the user by the public for more than ten years established the way as a public road by prescription. But as it appeared by the evidence in the case that the road involved had been used by the public for more than twenty-five years before the statute was enacted, the statute did not apply and it was not necessary to show the expenditure of public money.

In Patton v. Forgey, 171 Mo. App. 1, 153 S. W. 575, it was again held that the statute of 1887 did not apply to rights which had matured prior to its enactment and that the continuing, open and adverse use of the land for a public road for thirty or thirty-five years prior to the passage of that statute established an easement therein as a public road in favor of the public.

It is claimed that the Act of 1887 is here applicable. That act is substantially section 10,446, Revised Statutes 1909. [See Acts 1897, p. ·257.] It provides that, "All roads in this State that have been opened by any order of the county court, and a plat made thereof, and filed with the clerk of the county court of the coun-

ty in which such roads are situated, and have been used as a public highway by the traveling public for a period of ten years or more, shall be deemed legally opened and established county roads, notwithstanding there may have been irregularities in the proceedings had to establish and open such road; and nonuser by the public for a period of ten years continuously of any public road, shall be deemed an abandonment of the same; provided, that in all other cases than such as are hereinbefore provided for, no lapse of time shall divest the owner of his title to his land unless, in addition to the use of the road by the public for the period of ten consecutive years, there shall have been public money or labor expended thereon for such period.''

This section appeared substantially in that language, through various modifications of the road laws, being section 9694, Revised Statutes 1899.

In 1913, by an Act approved April 14, 1913 (Acts 1913, p. 658), the road law, in which was included section 10446, being chapter 102, Revised Statutes 1909, was repealed and a new law adopted in its place. Section 15 of this Act is word for word section 10446, Revised Statutes 1909. This latter Act was the law and in force when the present right of action is claimed to have accrued but it related back to the enactment of that Act in 1887.

It is not pretended that the road in controversy was opened by any order of the county court. It is claimed that it has been used as a public highway by the traveling public for a period of ten years or more, but it is not claimed that public money or labor has ever been expended on it for that period of time. As there is testimony in the case by parties now living that they had traveled this road sixty years before the date of the trial, which was in September, 1915, and by others that they had traveled it forty years before the date of the trial, the Act of 1887, and the subsequent repetition of the Act in the various revisions of the road law, can have no effect in this case, as we have seen by the

several decisions we have cited, if it be true that a right by prescription had been established to the road twenty or thirty years before that act went into effect.

The fact that plaintiffs had other roads which they might have used, although they were somewhat longer than the one in dispute, has no bearing on the questions here involved. If they had a right to the use of this particular road, the fact that they had other ways is immaterial.

It is argued that the petition does not state facts constituting a cause of action. We do not think this tenable. [See Patton v. Forgey, supra.]

Our conclusion upon the whole matter is that the judgment of the circuit court in awarding the injunction was right. To repeat, this has been a road in use by the public for more than sixty years, in point of fact the beginning of its use is lost in the mists of antiquity. No one pretends to remember when it commenced. There is no pretense that it was originally used under license or by permission; in point of fact, there was testimony to the effect that at one time it had been a county road, used as such and worked as such by the county authorities, but that was at a time beyond the definite recollection of any of the witnesses in this case, some of whom, as before remarked, being over seventy years of age, and had lived in the vicinity all their lives. The character of the use was such as to impart notice to the owner of the estate. He recognized the right of the public to use it, by providing for it when he moved his fences from time to time. The public, as all of the witnesses testified, used it as a road and as of right. It was the convenient road for the plaintiffs—convenient for their school, their church, their post office, their trading point. It is true that plaintiff says that defendant testified that the gates are so adjusted that they can readily be opened and are never locked, and that he has never stopped any one from going through, but the erection of these gates was in itself an assertion of exclusive ownership, as against the public on the part of the defendants, to

these premises, and plaintiffs were within their right when, by this action, they attempted to vindicate their claim, that this was a road over which the public generally had a right of passage.

Learned counsel for appellant have cited many cases outside of this jurisdiction as to the effect of allowing roads through woods and uncultivated lands. He has cited us to no cases within our own jurisdiction that in our opinion sustain his position.

We find no error in the admission or exclusion of testimony. The learned trial court made a finding of facts in the case, which we have read with interest and benefit, but as this is an action in equity, we are not bound by that and must determine for ourselves on the evidence, that finding being of no force in an action in equity. [Fitzpatrick v. Weber, 168 Mo. 562, 68 S. W. 913.] We have examined the testimony for ourselves with great care and basing our conclusion on that are satisfied the judgment is right and that it should be affirmed. It is so adjudged. *Allen* and *Becker, JJ.,* concur.