C. L. Proctor et al., Appellants, v. Lorain Proctor, Respondents.[*]

Kansas City Court of Appeals.   December 5, 1927.

[*]Corpus Juris-Cyc. References: Appeal and Error, 4CJ, section 2867, p. 897, n. 81; section 2868, p. 898, n. 87; Highways, 29CJ, section 145, p. 465, n. 12; section 197, p. 502, n. 66; section 252, p. 536, n. 33.

*Lyons & Ristine* for appellants.

*Aull & Aull* for respondent.

ARNOLD, J.—This is an appeal from an order and judgment dissolving a temporary injunction, whereby it was sought to prevent defendant from closing a section of an alleged public road located upon the line between Lafayette and Johnson counties in Missouri.

The petition for the injunctive writ was filed September 1, 1921. The record shows that defendant is the owner of forty acres of land being the southeast quarter of the southeast quarter of section 36, township 48, range 28, in Lafayette county and also owns forty acres immediately south thereof, being the northeast quarter of the northeast quarter section 1, township 47, range 28, in Johnson county, Mo. The line between the two tracts is the county line. Plaintiff G. W. Campbell owns the forty acres immediately east of and adjoining the forty, first above described, being the southwest quarter of the southwest quarter of section 31, township 48, range 27 in Lafayette county; and plaintiff C. T. Proctor owns the forty acres on the east and immediately adjoining defendant's second forty above described, and being the northwest quarter of the northwest quarter of section 6, township 47, range 27, in Johnson county, Mo., and also owns one hundred and twenty acres, the south 40 of which is immediately west of and adjoining defendant's forty acres in Lafayette county.

A quarter of a mile west of defendant's said land runs the Odessa-Holden county road, which runs north and south along the center line of said section 36 to the quarter section corner on the south thereof, and then turns west for a quarter and then south, and so on. There is a roadway or passage on the county line running east from the quarter section corner on the south side of section 36 to the quarter section corner on the south of said section 31, occupying twenty feet on the north side of the county line and fifteen feet on the south side thereof; the said strip runs between the two forty-acre tracts owned by defendant and between the two tracts owned by plaintiffs.

This is an equity suit and seeks by injunction to prevent perpetually the closing of said strip by defendant where it runs through his farm and to compel him to remove the fences and gates he had placed across the same, thereby destroying plaintiffs' right of ingress and egress to and from their property.

The petition alleges that for more than thirty years prior to the 8th day of June, 1921, the said strip of land was a public road and right of way; that said strip led to the respective lands owned by these plaintiffs; that it ran into and joined the Odessa-Holden road on the west and was used by plaintiffs in traveling to and from their homes in Odessa and their said lands; that said strip had been in continuous use and enjoyment of plaintiffs and those under whom they claim, of the people in that vicinity and the public generally, and that they have had the free, uninterrupted and continuous use and enjoyment thereof for a period of more than thirty years; that plaintiffs' said lands do not touch or join any other public road or right of way leading west to the Odessa-Holden road and thence

into Odessa, and said strip is the only means of ingress and egress to and from their respective farms.

The petition further states that on or about June 8, 1921, defendant unlawfully and without any claim or color of right to any portion of said road, planted fence posts, constructed gates and stretched wires across, over and along said road and right of way, and placed other material and obstructions in, across, along and over said road; said obstructions being placed at or near the southeast quarter of section 36, township 48, range 28, in Lafayette county, Mo.; and at or near the southeast quarter of the southeast quarter of said section, township and range, thereby blocking and obstructing plaintiffs' ingress and egress, use and enjoyment of their said lands; and that defendant has unlawfully and wrongfully appropriated said road and right of way to his own use and is now planning to own said strip and is exercising control and ownership over the same; that the said road so obstructed has been worked and graded by the various road overseers and county officials of Lafayette and Johnson counties for more than thirty years; that defendant recently filed a petition in the county court of Lafayette county, asking that a road be opened from his said land north, which said road would pass through plaintiffs' lands; that this petition, upon a proper hearing was refused by the county court; and that immediately thereafter defendant built and constructed the obstructions just mentioned; that the same were built by defendant with full knowledge of plaintiffs' rights and the right of the public generally to use said road; and with full knowledge that it was a public road and had been used and worked as such for more than thirty years next preceding, and against the remonstrances of plaintiffs and others.

The petition further alleges that the county court of Lafayette county instructed the county engineer to order said obstructions removed, but that defendant continued to maintain them unlawfully; and that plaintiffs thereby sustained and will continue to sustain irreparable damages thereby. The prayer is for an order of the court declaring said fences, wires, posts, gates and other obstructions of said road to be nuisances; and that defendant be enjoined and restrained from maintaining same and from doing any other act tending to obstruct said road and right of way and plaintiffs' use thereof; that defendant be required and ordered to abate and remove said obstructions, and for such other and further relief in the premises as to the court may seem just and proper. Upon proper service and notice, upon September 3, 1921, a temporary injunction was issued, as sought in the petition. In due time, defendant filed his motion to dissolve the temporary injunction and answered to the merits. The motion to dissolve sets up two grounds

therefor, to-wit: (1) There is no equity in the bill and (2) the petition does not state facts sufficient to constitute a cause of action.

The answer to the merits admits the ownership in plaintiffs and defendant of the lands described in the petition, and that on June 8, 1921, and for a long time prior thereto, defendant had erected and maintained upon his said premises at the south side thereof, posts and gates, and denies each and every other allegation of the petition. And for further answer defendant states he is and for fifteen years has been the owner in fee simple of the southeast quarter of the southeast quarter of section 36, township 48, range 28, and that during all times since he purchased same and for a long time prior thereto, he, and those under whom he claims, had erected and maintained posts, gates and sometimes wires from posts to posts or fences on, or along, portions of the south side of the said premises, and that the same were thereon on June 8, 1919, and at the time of the institution of this suit; that defendant purchased said real estate in 1906, free of claim from anyone for public roadway or otherwise; that there is not now and has not been at any prior time a public or other roadway, save for defendant's own convenience and those traveling along or over said portion of his said premises with his acquiescence and consent; that during said time, defendant maintained for his own convenience a roadway along the south side of said premises on, over and along which he permitted neighbors and others to pass, and over and across which he has erected and maintained for his own convenience and for restraint of stock and other purposes, posts and gates, through which he has permitted such neighbors and others to pass, out of courtesy and neighborly kindness to them, but without claim of right otherwise so to do.

The answer further alleges that about the year 1872, an effort was made to secure a public road through the premises in question herein, and other premises adjoining said county line, but the same was not established or opened, has not been used by the public, as such, no public work, labor or money has been expended thereon, and the same was long since abandoned; that there is not now and has not been at any time, to defendant's knowledge, any public road over said premises, other than the roadway of defendant aforesaid.

The answer states that over and along the entire route where such said road was so established as aforesaid, the respective proprietors and owners of the premises along the north side of said county line, have erected and maintained posts and gates and, at some places, fences, and that the same were so erected and maintained over and along defendant's said premises by the respective owners thereof for years prior to the purchase of said land by

defendant. That about May 2, 1921, defendant, with other free-holders in the immediate vicinity of his said premises, duly presented to the county court of Lafayette county, their petition for the establishment of a public road north, over and along certain premises which would have afforded plaintiffs ready ingress and egress to and from their said lands, and that plaintiffs, with others, successfully resisted the same by remonstrance, stating there was no necessity therefor and that the same was not practicable; that there was no demand for such road and that the cost thereof would be expensive and the lands of parties through which such road would run would be greatly damaged and injured, and would work irreparable damage and injury to the lands of plaintiffs herein and others.

Defendant states that after securing the preliminary order herein restraining him from maintaining the said gates, posts and fences, and requiring him to remove the same until further orders` of the court, plaintiffs and others have entered defendant's said premises and have plowed, scraped and otherwise trespassed thereon, while defendant, by order of court, was restrained from interfering therewith or protecting his premises. The answer seeks an order dismissing plaintiffs' petition, the dissolution of the temporary injunction, judgment for costs and other proper equitable relief.

The reply reaffirms the allegations of the petition and generally denies all the allegations of defendant's answer.

The trial was to the court sitting as a chancellor and evidence was introduced by both sides. At the close of the trial in June, 1922, the cause was taken under advisement by the chancellor and on October 26, 1922, a final decree was entered, embracing the following:

"The court . . . doth find the issues upon said motion to dissolve the injunction and restraining order heretofore granted herein in favor of the defendant, whereupon it is ordered, adjudged and decreed by the court that said motion to dissolve the injunction and restraining order heretofore issued and granted herein, be and the same is, hereby sustained, and said temporary injunction and restraining order be and the same is hereby dissolved, and it is ordered, adjudged and decreed by the court that the defendant have and recover of plaintiffs his costs and charges herein expended. The court upon the pleadings and merits and under the law and the evidence in this cause doth find that the passageway in question at the time of the institution of this suit was not and is not a public road or highway; and upon the pleadings and the evidence upon the merits herein, the court finds the issues for the defendant."

A motion for a new trial was ineffectual and plaintiffs appeal.

The motion for a new trial is conventional and embraces the following points: (1) The judgment should have been for plaintiffs; (2) the judgment is against the evidence and the weight of the evidence; (3) the judgment is against the law; (4) the court erred in refusing competent evidence offered by plaintiffs; (5) and in admitting illegal and incompetent evidence offered by defendant.

An appeal was allowed to this court and upon consideration the case was transferred to the Supreme Court for review, because it was thought the title was at issue. That tribunal found no such question is involved and sent the case back to us to be determined on its merits. As is the rule in equity cases, we have examined the entire record, including the bill of exceptions.

It is conceded by the parties that the principal issue in this suit is whether or not the strip of land in question which was fenced and obstructed by defendant was, in fact, a public road and highway. Plaintiffs take the affirmative side of the question and defendant the negative, insisting there is no road there, and that plaintiffs' use thereof was merely permissive and not adverse.

For their first point on appeal plaintiffs urge that the finding and judgment of the trial court should have been for plaintiffs and point out that the road in question was established by orders of the county courts of Lafayette and Johnson counties, in the years 1872 and 1873, respectively; that the road has been used ever since said orders were made and therefore was a public highway. It is noted that plaintiffs' position is that the strip of land described in the petition is constituted a public road and highway, both by order of the county court and by prescription or user. In support of the position that the said road was established by order of the county court, plaintiffs introduced in evidence an order of the county court of Lafayette county, as follows:

"State of Missouri, County of Lafayette, ss.

"August Term, 1872.

"In the county court of said county, on the 9th day of August, 1872, the following, among other proceedings, were had, viz.:

"Court's Report.

"In the Matter of a New Road on petition of A. C. Cheatham.

"Now at this day comes said party, also come Jno. D. Chambers, G. D. Satterfield and J. T. Dade, road commissioners, and make their report herein, marking out said road, which report is by the court approved and ordered filed, and said commissioners also file herein right of way to said road, which is ordered to be recorded, and it is ordered, that said road be established and worked as a county road twenty feet in width as follows:

"Commencing on the line between Lafayette and Johnson counties at the southwest corner of section 36, of township 48, of range

28, thence due east along the north side of said line near one-half mile, thence south 289 links, thence due east one-fourth of a mile, thence north 289 links, to the original line. Thence east on said line to the southwest corner of the southeast quarter of the southwest quarter of section 31, township 48 of range 27, thence to bear north of the line, and to touch same again at the southwest corner of the southeast quarter of said section 31, thence due east on the original line near two miles, thence to bear south of the line about 150 yards and so to continue to its intersection with the Lexington and Columbus road, whole length of road four and one-fourth miles. And it is further ordered that said road be opened and put in good traveling order forthwith by the overseer of the district through which said road is located. [Record No. 14, pages 325 and 326.]''

It will be noted this order purports to declare as a public road a strip twenty feet in width on the Lafayette side of the county line, beginning at the southwest corner of section 36, township 48, range 28, or, at what is referred to in the pleadings as the Lexington and Holden road, or the Holden-Odessa road, and running east and north with some jogs a distance of four and one-fourth miles. It is conceded that no part of this road is in question except that involving the land of defendant, the rest having been long since abandoned by non-user.

The fact that a part only of a public road is used for travel is not evidence of abandonment. [Baughman v. Faulwell, 156 Mo. App. 227, 137 S. W. 627.] Hence that part of the road east of defendant's property is out of this case. Section 6987 of the Revised Statutes of 1879, provided:

''All roads in this State that have been opened by an order of the county court, and a plat made thereof, and filed with the clerk of the county court of the county in which such roads are situate, and have been used as a public highway by the traveling public for a period of ten years or more, shall be deemed legally opened and established county roads, notwithstanding there may have been irregularities in the proceedings had to establish and open such roads; and non-user by the public for a period of ten years continuously of any public road, shall be deemed an abandonment of the same.''

We find section 10635, Revised Statutes 1919, similar to the one just quoted, excepting the clause ''and a plat made thereof, and filed with the clerk of the county court of the county in which such roads are situate,'' which does not appear in the later statute. But in the latter section we find the following significant clause:

''All roads in this State that have been established by any order of the county court, and have been used as public highways for a

period of ten years or more, shall be deemed legally established public roads; and all roads that have been used as such by the public for ten years continuously, *and upon which there shall have been expended public money or labor for such period,* shall be deemed legally established public roads,'' etc.

Thus it is seen that something more is required to establish a public road than the passage by the county court of a formal order for its establishment. Under the act of 1879, a plat was required to be filed with the clerk of the county court and the road must have been used as a public highway by the traveling public for a period of ten years or more. There is no showing in the case at bar that such a plat was filed with the county clerk, and there is no conflict in the testimony to the effect that no public money or labor has been expended upon the road at any time, as required by section 10635, Revised Statutes 1919.

It was held in Strong v. Sperling, 200 Mo. App. 66, 205 S. W. 266, that where prescriptive right was acquired prior to 1887, failure to expend public money on the road for ten years will not affect an easement. However, that rule would not seem to apply here, where the road was declared to be a public highway by order of the county court. It is defendant's position that the alleged public road here involved was never opened or prepared for use and travel. There is testimony strongly tending to support this position to the effect that neither in 1872, nor since, has there been any attempt to open or prepare the road for use of the public. There is evidence to the effect that on a few occasions some work was done on the road by individuals, as such. We must hold that, under the provisions of the statutes above quoted, the order of the county court declaring the road in question a public road was not effective because there is no showing that such order was followed by any act on the part of the officials to put the road in condition to be used. The opening was not completed.

Plaintiffs are not dependent wholly upon the said orders of the county courts to establish the rights of the public in the road, and the question of prescription remains to be considered. In our consideration of this subject, it is proper to go somewhat into the history of the alleged public road, as it appears in the record. We find that prior to 1872 there was no public road or highway at the point in question. At that time lands were not fenced and people traveled when and where they pleased without any defined or recognized routes. There seems to have been one or two families using this changing and undefined way. After the farms began to be pastured, cultivated and enclosed, a lane or byway was established by fencing. Apparently no one recognized the strip as a public road and it was not used as such, and it is shown to have been used for farming

purposes. As land came more under cultivation, fences were erected, farming lanes and stock lanes became more numerous and farms were separated thereby. By closing these lanes with gates and fences stock was confined within certain limits. The people in the neighborhood being friendly and neighborly were lenient in allowing the use of their lands as passageways by persons whose chose to use them. Then in 1872, the neighbors united in a proposal to establish a public road four and one-fourth miles in length on the county line and the order of the county court to that end was promulgated. From this circumstance it is fair to conclude that prior to 1872, there was no public road there; otherwise such order would have been unnecessary.

Defendant purchased the land in question from one R. E. Martin who was a witness for defendant at the trial. He testified that he had known defendant's farm for sixty-six years; that he was "born and raised" thereon; that his father who died in 1884 had owned the place before it came into possession of witness. The Lafayette-Johnson county line runs through the farm, forty acres being on the south and a like acreage on the north of said line. There was a road running east and west in front of the house, north of the road in question, between the house and barn, over which one or two families of the neighbors traveled. The road was not kept up at all with the exception of the little work witness did on it himself when he wanted to get out; he seldom used it but went through the fields. There was no one to go in and out except one or two families and they passed by witness's house part of the time. Witness had two gates up across the road in question, one at the top of the hill at the west line, and the other east of the house about fifty to 100 yards. If he wanted to pasture the south field, he shut those gates; otherwise they were left open. The gates had been there since 1879; the father of the witness had kept the gates up part of the time prior to that year, but after 1879, the witness kept them up until he sold the place to defendant.

"One of the gates was still there (when witness sold the land) and is there today hanging on Mr. Caleb Proctor's fence, the same old wire gate that I put up, three wires with a piece of rail tacked in the center to hold the wires apart, and the other end of it was a round pole that I used for handling the gate, carrying it around and setting it up."

Witness Martin further stated that: "The road used to come out, started at the top of the hill at our south line and come down east, at a rough guess I would guess about 200 yards south of where the road is now, and cross the branch and angle back up northwest past our old barn and a lot we had fenced there within about fifty or seventy-five yards of the house, and then it took off again to the

east, one road did, and the other one there they could go down, some went down southeast and crossed the branch again and up through a pasture there and right out through the woods.''

The passageway that went around the barn was there during the civil war and remained until about 1881, and ''in that time I cleared that forty and fenced it up there and the road, then they come, traveled through there by the house.'' The witness stated he had made no objection to the traveling through there.

The witness Martin was corroborated by other witnesses for defendant. The purpose of the evidence was to show that the road running west from Campbell's house was seldom used. Witness Daniel Adams stated that from 1893 to 1900 he lived on the farm adjoining the Lorain Proctor place; that in going out he went by Caleb Proctor's place. The road running west from Campbell's place wasn't much of a road.

''Everything most was the matter with it. The weeds had growed up in it and there was a ditch in it, and there was gates across it and it wasn't as good a way to get out as the north way, and I used the gateway out the north way just the same as I would have to use it if I went that way.''

Adams stated he paid no poll tax by working on that road but worked a little once to fill up a few ditches for the convenience of his daughter who went to school that way on horseback. He fixed it so that she could get through; did not remember ever working that road but once; his daughter went that way part of the time and at other times she went north through an outlet intersecting a public road; never saw the road along Lorain Proctor's place in good condition and so did not use that road. The work he referred to was what he did along Mr. Campbell's place, not along Lorain Proctor's place.

Many witnesses were introduced in behalf of both sides to this controversy and their testimony was conflicting in some particulars. There was testimony to the effect that the entire road was opened originally and used by the public for a period of ten to fifteen years. On the other hand there was evidence to the effect that from Campbell's east, the road never was opened and used by the public. There was some evidence that from time to time public money and labor was used upon this road, and there was much testimony to the contrary. Some witnesses testified that the road from Campbell's farm west was not exactly on the county line until 1892, while others testified it was on the county line and had been since 1872.

While the evidence is contradictory on some essential points, the chancellor was justified in finding: (1) That the road in question was never worked by citizens or road overseers as a public high-

way; (2) that there never was expended any public labor or money thereon; (3) that it was never at any time indicated as a public highway on any plat or map of any road district, or otherwise; and (5) that the public never at any time used the road in question as a public highway; (6) that there was evidence tending to show that the road had not been used as a public highway for a continuous period of more than ten years since 1887.

We think this holding was justified under the ruling in Wainscott v. Strode, 237 S. W. 196; State ex. rel. v. Sedalia, 241 S. W. 656; Gorman v. Railroad, 255 Mo. 483, 491. A case which we find directly in point is Johnson v. Rasmus, 237 Mo. 586, 141 S. W. 590, in which the rulings on the points involved herein are against plaintiffs' contentions. The findings of the trial court in an equity case are not binding on us, but as that court heard the evidence and saw the witnesses it is in better position to weigh the evidence than are we, since we must review the matter in cold type. It is our duty to review the evidence and determine the case on its merits, but we give the judgment and opinion of the trial court due weight in the matter. [Strong v. Sperling, 200 Mo. App. 66, 205 S. W. 266; Oetting v. Pollock, 189 Mo. App. 263.]

We hold the decree and judgment were proper and find no reversible error in the trial of the case. The judgment is affirmed. *Bland, J.,* concurs; *Trimble, P. J.,* absent.