LESLEY CHAPMAN and FLORA CHAPMAN, Appellants, v. PHILLIP SCHEARF and MYRTLE SCHEARF, His Wife, GLENN EAKER and FERLEY EAKER, His Wife, LLOYD SCHEARF, and JOHN HESTER and EULA HESTER, His Wife, Respondents, No. 41567—229 S. W. (2d) 552.

Court en Banc, May 8, 1950.

J. *Grant Frye* and *Gerald B. Rowan* for appellants.

 VAN OSDOL, C.—Action in equity to establish the right of an easement in the public over the lands of defendants. The plaintiffs prayed that the title to the described road be quieted; that their rights and the rights of defendants therein be determined; and that defendants be permanently enjoined from interfering with plaintiffs' use of the road and for such other relief "in the premises as shall seem meet and just." Defendants denied the servitude of their real estate was other than that which had existed for the past ten years in plaintiffs, and alleged that any right of plaintiffs or of the public to use the roadway over defendants' lands was subject to the right of defendants to maintain gates across the roadway.

The trial court found that the public had acquired a right of user for highway purposes over a route in the petition particularly described through and over the lands of defendants, and enjoined defendants from interfering in any way with the use of the road by the plaintiffs "as a part of the traveling public," except and subject to the right of defendants and their successors in title to maintain four gates across the roadway; the court further enjoined plaintiffs from leaving the gates open after passing through them "at times when they (plaintiffs) find them closed" and from damaging the gates in any respect; and the court apportioned the costs as incurred by the respective parties, plaintiffs and defendants, except certain fees of the officers of the court, which latter fees were assessed equally against and between the plaintiffs and defendants.

 The plaintiffs were granted an appeal to the St. Louis Court of Appeals, but that court upon examination of the record transferred the cause to this court on the ground "title to real estate" is involved. See Chapman v. Schearf, Mo. App., 220 S. W. 2d 757; Section 3, Article V, Constitution of Missouri, 1945, Mo. R. S. A. Const., Art. V, § 3.

Since plaintiffs prayed for the relief of a decree determining the rights of plaintiffs and defendants and for the quieting of title, and since the decree does establish the right of an easement in the public use, the relief sought does raise a "title issue" and the relief granted does directly operate upon defendants' title "in some measure or degree." We agree with the St. Louis Court of

Appeals that title to real estate is involved. Nettleton Bank v. McGauhey's Estate, 318 Mo. 948, 2 S. W. 2d 771; Chapman v. Schearf, supra.

The roadway in dispute is situate in the southern part of Cape Girardeau County in an area where generally level land is broken by hills. An unimproved road extends (from the farm-to-market road between Delta and Allenville) a half mile to the southward, thence eastwardly up a very steep hill, thence to the approximate northwest corner of an eighty-acre tract (NE ¼ SE ¼ Section 6 and NW ¼ SW ¼ Section 5), lands of defendants Phillip and Myrtle Schearf, which property is sometimes called the "Gordon Scott or Stoffregen Place." Thence the disputed part or segment of the road meanders, along the crest or divide of a high ridge, eastwardly and southwardly across the described land of defendants Schearf; and southwardly on and across the land (SW ¼ SW ¼ Section 5) of defendants John and Eula Hester. At the south line of the Hester lands (very near the southwest corner of Section Five) the disputed segment of the road ends. However, the road passes on southwestwardly on to and across the land and to or near the improvements thereon belonging to plaintiffs; thence, something over a mile, to Kenyon Cemetery. The entire road is sometimes referred to by witnesses as the "Kenyon Cemetery Road."

Defendants have perfected no appeal from the judgment and decree determining their lands are subject to the right of the public to an easement for travel. But plaintiffs-appellants contend the user of the public way may not, under the evidence, be subjected to the obstruction of gates, and the decree is erroneous in that the evidence was insufficient to establish the right of defendants to maintain the gates. It is argued the evidence shows that the locations of the gates were changed at various times and the maintenance of the gates was not continuous but intermittent; and that the evidence was wholly insufficient, as a matter of law, to give defendants the prescriptive right to maintain gates across the roadway. The plaintiffs-appellants say the court erred in finding the defendants have maintained a maximum of four gates. It is argued defendants had alleged the road was burdened with but three gates. Plaintiffs-appellants further complain the trial ▆ chancellor's affirmative injunctive relief to defendants against plaintiffs is beyond the scope of the pleadings. Plaintiffs-appellants remind us defendants had not asked for affirmative equitable relief. And they further contend the trial court erred in apportioning the costs between the parties, plaintiffs and defendants, as stated supra.

Plaintiffs bought their land in August 1935 and commenced building a house that year, although the house was not completed until 1937. Plaintiff Lesley Chapman had occasionally traveled the

disputed road since in 1914. He knew at the time he bought his place "they were going in and out . . . it was traveled all the time."

Witnesses for plaintiffs and defendants were not harmonious in their testimony of the location of the gates across the disputed segment of the road, nor is the testimony clear in establishing the precise time the gates were originally installed; but the evidence preponderates in supporting the view the disputed road has been used by the public, including the landowners along the roadway, since about 1900, in traveling to the Kenyon Cemetery; in hauling lumber and ties during the following "ten or fifteen years"; in going to and fro in treating the sick, and in hunting; in approaching and departing from the home on the Gordon Scott Place; and subsequently in approaching and departing from the home of defendants Hester. Coincident with the user, wire gaps were maintained where the fence lines crossed the way. (It seems two wire gaps are now changed to wooden gates or bars.) The wire gaps, "strands of barbed wire on a stick," were intermittently down or open, but were up or closed when necessary to prevent livestock from passing out of the enclosures. The way is defined by the travel-beaten width of approximately twelve feet.

A witness for defendants stated the disputed way was originally "a little cow path . . . . . There have been gates over that road since 1900 or even before. . . . Every time I went through there, there has been gates. Sometimes they are open and sometimes they are not." The witness stated plaintiff Lesley Chapman, when he built his home, hauled his building materials over the disputed roadway. The witness further testified a gate was maintained at the "John Hester south line" near the "John Hester (house) place . . . (down an incline)"; and another "between him (John Hester) and Stoffregens (Gordon Scott Place)." Other witnesses also testified positively relating to the maintenance of these two gates. There was also substantial evidence tending to show a gate was maintained across the road as it entered the Gordon Scott Place near the northwest corner thereof. (The evidence, in our opinion, does not justify the trial court's finding of any other (fourth) gate maintained across the disputed way and the trial court's finding and decree should be modified accordingly.)

Gordon Scott, who owned the Gordon Scott Place from 1930 to 1945 (he had sold his south forty to Hester in 1935), testified as follows, "Q. Did you ever make a grant of any roadway or pathway to anybody during the period you lived there? A. I did that." He further stated people came in and out any time "they wanted to go through"; but they closed the gates, "never had any trouble."

The evidence when considered as a whole preponderates in showing that the owners of land along the disputed road, defendants' predeces-

sors in title, had the intention to conditionally or partially set aside or dedicate to the public use and convenience the described roadway; and that the public, including plaintiffs, accepted and used the road to such an extent (considering the isolated location of the neighborhood and the roughness of the terrain) and for such a time as to acquire the right of user. (See implied dedication founded on the doctrine of equitable estoppel. Borchers v. Brewer, 271 Mo. 137 at pages 142-143, 196 S. W. 10 at page 12; School District No. 84 v. Tooloose, Mo. Sup., 195 S. W. 1023; State ex rel. McIntosh v. Haworth, Mo. App., 124 S. W. 2d 653.) But the evidence shows the donors manifested an intention to set aside the roadway to a *restricted* public use. Compare Faulkner v. Hook, 300 Mo. 135, 254 S. W. 48.

During the time of the user by the public, the public use was subjected to the continued inconvenience or burden of (three) gates maintained by the landowners along the roadway. If a way acquired by use, "although well marked and defined, is restricted, during the time required for the establishment of the right, to a use and enjoyment thereof with bars or gates across it, the right acquired will be restricted to the same extent." Rogerson v. Shepherd, 33 W. Va. 307, 10 S. E. 632; Faulkner v. Hook, supra; Brookshire v. Harp, 186 Ky. 217, 216 S. W. 379. (Under this view of the law, the maintenance of the gates is no negation of the easement. Faulkner v. Hook, supra, and cases therein cited.) It has been said even a *dedication* may be for a partial use. Washburn's Easements and Servitudes, 4th Ed., § 5, p. 214. The instant case differs from the cases of Phelps v. Dockins, Mo. App., 234 S. W. 1022; and Strong v. Sperling, 200 Mo. App. 66, 205 S. W. 266, in which the public had acquired the ripened right to the unrestricted use of the roadways. Such a user could not thereafter be rightly interrupted by the obstructions of fences or gates.

Defendants did not ask for affirmative equitable relief, but the trial chancellor in determining the issues of injunctive relief sought by plaintiffs properly undertook to do full, adequate and complete justice between the parties justified by the evidence. Rains v. Moulder, 338 Mo. 275, 90 S. W. 2d 81, and cases therein cited. As stated, the trial court enjoined defendants from interfering in any way with the use of the road by plaintiffs "as a part of the traveling public," and the plaintiffs were enjoined from and commanded to cease leaving the gates open or damaging the gates in any way. Thus did the trial court by counterpart injunctive orders protect the plaintiffs' right to user and the defendants' right to maintain gates. The counterpart orders made the whole decree commensurate with plaintiffs' right. Convincing evidence justified the court's finding plaintiffs had failed and refused to close the gates in passing. The relief to defendants by way of injunction against plaintiffs was con-

sistent with the action tried. In this respect our case differs from the cases of Branner v. Klaber, 330 Mo. 306, 49 S. W. 2d 169; and Snodgrass v. Potter, Mo. Sup., 215 S. W. 2d 497, cited by plaintiffs-appellants.

As we have seen, the trial court in determining the substantial issues in invoking equitable relief found the issues partly in favor of plaintiffs and partly in favor of defendants. We see no abuse of the trial court's discretion in the apportioning of costs between the parties, plaintiffs and defendants, as stated. Courts in equity have the inherent and discretionary power to award costs, and may order one party or the other to pay the costs or may apportion them among the parties. Publicity Bldg. Realty Corp. v. Thomann, 353 Mo. 493, 183 S. W. 2d 69. In the instant case the trial court had considerable discretion in taxing the costs. Publicity Bldg. Realty Corp. v. Thomann, supra; Bruegge v. State Bank of Wellston, Mo. Sup., 74 S. W. 2d 835; Bender v. Zimmerman, 135 Mo. 53, 36 S. W. 210.

The trial court's judgment should be modified as indicated supra, and otherwise the judgment and decree should be affirmed.

It is so ordered.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the Court en Banc. *Dalton, Leedy, Tipton, Conkling* and *Clark, JJ.*, and *Hyde, C. J.*, concur; *Ellison, J.*, concurs in separate opinion filed.

ELLISON, J. (concurring).—I concur, believing the foregoing decision and the opinion of the Court of Appeals to be in line with Smith v. Santarelli, 355 Mo. 1047, 199 SW. (2d) 411, and Wallach v. Stentina (Mo. Div. 1) 20 SW. (2d) 663, 664(2), in addition to the Nettleton Bank case cited in the principal opinion.