## Carter, et al. v. Shrout, et al.

(Decided November 18, 1919.)

### Appeal from Bath Circuit Court.

1. Highways—Passways—Prescriptive Use.—It is a well recognized doctrine in this jurisdiction that a passway may be acquired by prescription, whether the claimant be the public or an individual. If the owner of land suffers the public or an individual to use a passway over his land, knowing it is claimed as a matter of right, and such user is continued under a claim of right for as much as fifteen years, the law presumes a grant or dedication of the passway by the owner to the public or individual, and its acceptance by the latter; and in such state of case the burden is on the owner to show that the use of the passway by the public or individual has been permissive.

2. Highways—Use of Passway as Matter of Right.—The necessity for the passway is not material, where it is claimed and has been used as a matter of right, adversely to the owner of the land, for as much as fifteen years.

3. Highways—Prescriptive Use—Evidence.—Where it is made to appear from the evidence that a passway has been continuously used as such by the public, adversely to the owner of the land and under a claim of right for the statutory period of fifteen years, or, as in this case, a much longer time, the owner of the land, after the prescriptive right of the public to the use of the passway be-

comes thus fixed, cannot by objecting to its use by certain in-
dividuals or giving permission to certain others to use it, de-
prive the passway of its character as such, or the public or such
individuals of the right to continue its use.

4.   Appeal and Error—Finding of Chancellor.—In an equitable action
the Court of Appeals will give the chancellor's findings of fact
some weight and will not disturb the judgment, unless it is un-
supported by the evidence. But if after examining and weighing
the evidence for itself, it is left in doubt whether it supports the
judgment, it will in such state of case affirm the judgment.

JOHN WINN and J. P. HOBSON & SON for appellants.

LOUIS APPERSON and J. J. NESBITT for appellees.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

Appellants sought in this action to enjoin appellees
from using a passway through their farm. Appellees'
answer asserted a right in them to the use of the passway
as a public way, alleging a continuous uninterrupted use
thereof by themselves, their vendors and the public gen-
erally, adversely to appellants, their vendors and all
others, for more than fifteen years; indeed, for about
seventy-five years, next before the institution of the ac-
tion. The controlling issue, therefore, was whether the
user was merely permissive, as claimed by appellants,
or of the adverse character ripened into a right by pre-
scription, claimed by appellees. On the final hearing
the circuit court refused the injunction asked by appel-
lants, sustained appellees' right to the use of the pass-
way and dismissed the petition. From the judgment en-
tered pursuant to these rulings, the former have ap-
pealed.

The passway, as shown by the red lines on a map in
the record, runs from a public road known as the "Sugar
Grove Road," near where it crosses Slate creek through
the lands of the appellees, Charles Steele, Robert Donald-
son; the appellee, N. A. Shrout; the appellants, Emily
Carter, etc., and the heirs at law of Shelby Goodpaster,
in the order named, finally intersecting a turnpike known
as the "Salt Well Road." The Sugar Grove road crosses
Slate creek at a mill near where it is entered by the pass-
way, but its course after crossing the creek is not shown
on the map. It, however, runs somewhere west of the
lands shown on the map, and connects with the Salt Well
turnpike somewhere west of Slate creek, but neither the

point of connection nor its distance from the point where the passway in question connects with the Salt Well turnpike on the opposite side of the creek, is shown by the map.

The lands of the appellees, Steele and Donaldson, lie on one and the same side of Slate creek, and those of the appellants and the appellee, Shrout, on both sides of Slate creek. The creek runs on a line nearly parallel with the passway from the Sugar Grove road to a point near the center of the appellants' lands, where the passway turns obliquely northward and substantially continues that course until it intersects the Salt Well turnpike beyond appellants' land. The appellants and the appellee, Shrout, have fords on Slate creek where they cross to and from their respective lands from either side of the creek to the other.

The appellants' land, known as the Carter farm, of 170 acres, with the contiguous lands, originally belonged to one Ragland, who died many years ago. After Ragland's death, his son-in-law, Elijah Carter, acquired title to the 170-acre farm by buying out the other heirs. Elijah Carter in 1850 conveyed the 170-acre tract of land to his son, James Carter, who owned and lived upon it until his death in 1911. James Carter was survived by his wife, the appellant, Emily P. Carter and an only child, the appellant, Eliza Garrett, wife of the appellant, Thomas Garrett, and the widow and daughter now own and reside upon the land.

For some years prior to 1866 the tract of land designated on the map as the Robert Donaldson land, was owned by Martin Carter, a brother of James Carter, of whom Donaldson purchased it. The tract of land designated on the map as the Steele land, now owned by the appellee, Charles Steele, was formerly owned by one Gilmore, by whom it was sold and conveyed to Perry Steele, the father of Charles Steele, who thereafter conveyed it to the latter.

Although Robert Donaldson, over whose land the passway, in part, runs, is relied on by appellants to support their contention that the use of the passway by appellee and others was permissive, he is not a party to the action, nor does it appear that he has ever made any objection to the use of the passway by appellee and others during his more than fifty years' ownership of the Martin Carter land.

The record discloses at least two potent reasons why the many persons who are shown to have long traveled this passway should have done so. First, whether in traveling the Sugar Grove road toward Slate creek the object was to reach the Salt Well turnpike to go to Owingsville, the county seat of Bath county, or in travelling the Salt Well turnpike from Owingsville, intermediate places, or points below the Carter land to get to the Sugar Grove road for the purpose of reaching the places or neighborhood to which it leads, by taking it the traveler would greatly shorten the distance between the two public roads and at the same time avoid crossing Slate creek, which is often made dangerous by reason of its high waters. Second, use of the passway would also enable the traveler to avoid that part of the Sugar Grove road beyond Slate creek which, according to the evidence, is, and always has been, very rough and badly maintained.

The evidence appearing in the record is all to the effect that the passway, substantially as it now runs, has been in existence continuously for more than seventy years, or ever since the Carter and Donaldson farms were owned by Ragland; the ages of the witnesses so testifying ranging all the way from ninety-four down to less than twenty-five years. The depositions of about eighty witnesses were taken in the case and read on the trial, less than half of whom testified in behalf of appellants; some of them as to acts and declarations of James Carter, while in possession of the land now owned by appellants, tending to show that the use of the passway thereon was merely permissive. A few of these witnesses claimed to have asked and obtained of Carter permission to use the passway; others that he maintained for a while a gate or drawbars across the passway. It is, however, fairly apparent from the testimony of the latter witnesses that the permission they obtained from Carter was to go over his land to reach the passway, rather than permission to use the passway itself. We think it also apparent from the evidence that neither a gate nor drawbars was maintained across the passway by Carter within twenty-five years of the institution by appellants of this action.

The many witnesses whose depositions were taken by appellees, practically all testified to the effect that the passway was used as a matter of right uninterruptedly

and continuously for more than fifty years by appellees, their vendors and the public generally. Some of these witnesses also testified as to certain acts and statements of James Carter conducing to show his recognition of the right of appellees and others to use the passway over his land, and we recall no instance furnished by the evidence of his having prevented the use thereof by any one.

It would serve no good purpose to enter upon an elaborate discussion of the voluminous mass of evidence contained in the record or to consider in detail the testimony of particular witnesses. While unusually conflicting in many respects the evidence as a whole may be said to establish with marked distinctness this controlling fact, namely, the existence of the passway in question and its continuous and free use by the public for a far longer time than the required statutory period. Indeed, it may further be said that, according to the evidence, the passway was established while the Carter land was owned by Ragland and its use enjoyed by the public for more than fifteen years continuously before the death of Ragland.

It is a well settled doctrine in this jurisdiction that a passway may be acquired by prescription, whether the claimant be the public or an individual. If the owner of land suffers the public or an individual to use a passway over his land, knowing it is claimed as a matter of right, and such user is continued under a claim of right for as much as fifteen years, the law presumes a grant or dedication of the passway to the public or individual and its acceptance by the latter; and in such state of case the burden is on the landowner to show that the use of the passway by the public or individual has been permissive. Riley v. Buchanon, 116 Ky. 625; Smith v. Pennington, 122 Ky. 355; Hampton v. Fuson, 165 Ky. 182. The necessity for the passway we have not considered, as that question is not material where, as in this case, the passway is claimed as a matter of right. Anderson v. Southworth, 25 R. 7763; Chenalt v. Gravett, 27 R. 403. The conflict in the evidence here is, as to whether the use of the passway during James Carter's ownership of the land, now owned by appellants, was or not permissive? As the circuit court decided this issue of fact in favor of appellees, we will apply the well-known rule repeatedly stated in the opinions of this court as follows:

"In an action in equity, while the circuit court's findings of facts will not, on appeal, be treated as the verdict

of a properly instructed jury, they will be entitled to some weight, and though the Court of Appeals will and does examine and weigh the evidence for itself, it will not disturb the judgment unless it is found to be unsupported by the weight of the evidence; and if left in doubt from its examination of the evidence, whether it supports the judgment, it will in such state of case affirm the judgment." Meeks v. Ward, 184 Ky. 20; Fields v. Couch, 169 Ky. 554; Herzog v. Gilson, 170 Ky. 375. As we are not satisfied that the circuit court erred in its findings of fact, the judgment is affirmed.