### Brookshire, et al. v. Harp, et al.

(Decided December 12, 1919.)

### Appeal from Spencer Circuit Court.

1. Easements—Presumption of Grant—Permissive Use.—Long continued use of a passway under a claim of right will create a presumption of grant, which presumption the owner of the servient estate must overcome by proof showing that the use was permissive only; but no merely permissive use of the passway will create a right, however long the use may have been.

2. Easements—Permissive Use.—While gates across a passway may be evidence of the fact that the use was permissive only, their existence is not conclusive of that fact, and the use of the passway with gates may be of such a character as to constitute the right to use it burdened with the gates.

3. Easements—Implied Grant.—Where one conveys a part of his estate, he impliedly grants all those apparent or visible ease-

ments upon the part retained which were at the time used by the grantor for the benefit of the part conveyed, and which are reasonably necessary for the use of that part.

4.   Easements—Adverse Occupancy—Obstruction.—The owner of a servient estate may destroy the right of an owner of an ease-ment over it by adversely occupying by obstructions the easement for as much as fifteen years in the same manner required for obtaining title by adverse possession. But an occasional ob-struction of the passway, and not a continuous one, will not be sufficient for that purpose.

JOHN S. KELLEY, SAM BAIRD, KELLEY & BEARD and J. W. C. RUME for appellants.

L. W. ROSS for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

This suit involves the right of appellants and plain-tiffs below, F. M. Brookshire and wife, to the use of a passway across the farm of appellees and defendants below, Ben Harp and wife. Both farms of plaintiffs and defendants are situated in Spencer county. The land owned by plaintiffs, and to which the passway is alleged to be appurtenant, contains sixty-five acres, while that owned by defendants contains one hundred and fifty-four acres. Between the latter and the Bloomfield and Taylorsville pike there is a narrow strip of land belong-ing to J. W. Wakefield, across which the passway in con-troversy runs and in which plaintiffs also claim an ease-ment. But that portion of the passway crossing the land of Wakefield is not in controversy in this litigation.

Some time in March, 1917, the defendants, who had owned the servient estate but a short while, locked the gates which had been erected across the passway, and which gates had been in use as far back as the testimony goes, and to compel them to unlock the gates and keep them unlocked, the plaintiffs filed this suit.

The petition claims the right to the easement by pre-scription, and also as being appurtenant to plaintiffs' land and made so by the remote common vendor of both plaintiffs and defendants. Both of these claims were re-sisted by the answer, which alleged that the passway had always been only a permissive use by the owner of the servient estate, and it was further alleged that plain-tiffs owned other lands adjoining the sixty-five acres along the lines of which ran a public road, to which they

had access over their own lands, and that defendants should not be required to furnish an easement over their land for the benefit of the sixty-five acres. Appropriate pleadings made the issues, and upon trial the court dismissed the petition, and from that judgment plaintiffs prosecute this appeal.

The record discloses the following undisputed facts: That long prior to the year 1851 the passway ran from the pike across defendants' land to the residence on plaintiffs' land, practically upon the same ground as now located. In that year J. H. Wakefield became the owner by purchase of the sixty-five acres, and the following year he purchased the one hundred and fifty-four acres now owned by the defendants. He used the two tracts as one farm until 1878, when he sold to his son, J. R. Wakefield, the sixty-five acres, and the latter, together with those occupying the premises, continued to use the passway without let or hindrance throughout the life of J. R. Wakefield, who died many years thereafter.

Subsequent owners of that tract continued to use the passway in the same manner, and during all of the time people living beyond that tract also used it as a necessary neighborhood route to and from their homes to the public pike. No owner of the land now owned by defendants ever questioned or interposed the slightest objection to the use of the passway in the manner indicated until about the year 1900 when one Heady, who had become the owner of it, expressed dissatisfaction with the use of the passway for hauling heavy loads at certain seasons of the year, but he took no steps in court or otherwise to close it up, further than at one time to lock one of the gates for a very short while. Similar action was occasionally taken by subsequent owners of the servient estate, but notwithstanding these temporary objections the use of the passway by those occupying plaintiffs' farm, and those living beyond it, continued practically the same as it had theretofore existed.

Defendants became the owners of their land on February 26, 1917, and they permanently obstructed the use of the passway within less than thirty days thereafter. For many years (but just how long does not appear) a neighborhood road known as Och's lane ran within a mile of plaintiff's tract, and that road connected with

the Bloomfield and Taylorsville pike at a point much further from plaintiffs' residence than does the passway in question and to travel that route would increase the distance to plaintiffs' postoffice and school about two miles and three-quarters. For a long while those occupying the land of plaintiffs, to get to Och's lane, would be compelled to travel over other lands if they could obtain permission so to do. That lane has since been converted into a public road which defendants claim is now accessible to plaintiffs, and that because thereof their right to the passway should be denied. The present undisputed right to enter the Och's lane from the sixty-five acres grows out of the fact that the intervening land has since been purchased by the owner of that tract. This condition did not exist when J. R. Wakefield obtained his deed from his father in 1878, and his only outlet at that time was over the remaining one hundred and fifty-four acres belonging to his father, and which outlet is the passway now in question.

The law is well settled in this state that after a continuous, uninterrupted use of a passway for as much as fifteen years, it will be presumed that the right is exercised under a grant and the burden is upon the owner of the servient estate to show that such use was permissive, which he may do and defeat the right, although it had been exercised under a permissive use from time immemorial, since no length of time of such use can ripen into a right. Salmon v. Martin, 156 Ky. 309; Bales v. Rafferty, 161 Ky. 511; L. & N. Railroad Co. v. Cornelius, 165 Ky. 132; Mitchell v. Pratt, 177 Ky. 438, and cases referred to. That the use of the passway in question by the owners of the dominant estate in this case, as well as by other members of the public, was under a claim of right for a period of as much as forty years prior to 1900, is indisputably established by the testimony in the record. It is true that during all that time gates were across the passway, but this fact is not conclusive that its use was permissive only. Skaggs v. Carr, 178 Ky. 849. Nor does the opinion in the case of Mitchell v. Pratt, *supra*, hold to the contrary. That opinion, and other cases referred to therein, went only to the extent of holding that the erection of gates by the owner of the servient estate, and their maintenance by him, was a circumstance indicating that the use of the passway was permissive

only, and not that it was conclusive of the character of the use. The record here does not disclose who erected or who maintains the gates, but if we concede that they were erected and maintained by the defendants and their predecessors in title, plaintiffs would not be concluded by this fact. It is as competent for one to acquire a burdened easement as it is to acquire an unburdened one.

In their effort to show that the use of the passway was permissive only, the defendants introduced witnesses who stated in a general way that they regarded the use as permissive, but they mentioned no fact indicating that the use was of that character, nor did they give any circumstance as forming a basis for their conclusion, except perhaps the occasional objections which the owners of the servient estate made of the nature above set out. One fact relied on by defendants as establishing a permissive use only is that at one time a tenant on the dominant estate repaired the passway, under an arrangement with the owner of the servient estate, by placing gravel or rock thereon, and it is insisted that this was clearly indicative that the use was permissive only. But we do not so construe the circumstance. According to our view, the fact is as consistent with the use of the passway under a claim of right as it is evidence of a permissive use only. Moreover, we think the facts of this case come within the principle announced in the cases of Damron v. Damron, 119 Ky. 806; Bentley v. Hampton, 28 Ky. Law Rep. 1083; Irvine v. McCreary, 108 Ky. 495; Muir v. Cox, 110 Ky. 564, and Stone v. Burkhead, 160 Ky. 47. That principle is that ''Where one conveys a part of his estate he impliedly grants all those apparent or visible easements upon the part retained which were at the time used by the grantor for the benefit of the part conveyed and which are reasonably necessary for the use of that part.'' (Stone v. Burkhead, *supra.*) It is stated thus in the McCreary case:

''It may be considered as settled in the United States that, on the conveyance of one of several parcels of land belonging to the same owner, there is an implied grant or reservation, as the case may be, of all apparent and continuous easements or incidents or property which have been created or used by him during the unity of possession, though they could then have had no legal

existence apart from this general ownership.'' Excerpts from the other cases referred to are unnecessary.

When James H. Wakefield, in 1878, conveyed to his son, J. R. Wakefield, the land now owned by plaintiffs, the passway over defendants' land now in contest was apparent, and its use had been continuous for more than thirty years. It was not only reasonably necessary for the use of the tract conveyed, but under the proof it was absolutely necessary for the use of it. An implied grant to the use of the passway over the remaining tract (that now owned by defendants) of J. H. Wakefield necessarily resulted.

The only remaining question is—have the defendants and those under whom they claim destroyed the right to the easement? They claim to have done so by what they term an adverse user since 1900, a period of more than fifteen years before the bringing of this suit. To accomplish such a result the alleged adverse user must be of the same character as is required to obtain title to real estate; i. e., it must be notorious, continuous, adverse and exclusive for the statutory period. Clay v. Kennedy, 24 Ky. Law Rep. 2034, and 14 Cyc. 1195.

The occasional locking of the gates during wet seasons of the year, as testified to by witnesses for the defendants, does not constitute an obstruction by adverse occupation within the rule referred to so as to defeat plaintiffs' right to the use of the easement. Such obstructions were temporary, only, and did not in any sense constitute an appropriation of plaintiffs' property in the easement, nor was it such an adverse holding as to eventually bar the right to the easement. Neither is there merit in defendants' contention that plaintiffs now have other means of egress and ingress by traveling over their land to Och's lane, for the passway having become appurtenant to defendants' sixty-five acres of land, the right to it was not lost by the acquisition of adjoining land which might furnish him another outlet.

It results, therefore, that the court committed error in dismissing the petition, and the judgment is reversed with directions to sustain the prayer of the petition, and to enter a judgment in conformity with this opinion.