## Morgan v. Morgan.

(Decided November 14, 1924.)

## Appeal from Owen Circuit Court.

1. Easements—Grantee Held to have Way of Necessity to Highway Over Grantor's Intervening Lands.—Grantee of land, separated by grantor's intervening land from highway to which he had no other means of access, had way of necessity across intervening land.

2. Easements—Right to Passway May be Acquired by Continual Use for 15 Years Under Claim of Right, Notwithstanding Changes in One Terminus.—Right to private passway may be acquired by continual use for 15 years under claim of right, notwithstanding changes in one terminus by agreement.

3. Easements—Possible Hardship on Servient Owner Held Not Ground for Reversal of Judgment, Permitting Repair of Passway by. Dominant Owner.—That dominant owner's right to repair private passway crossing natural watercourse over servient owner's land, so as to make it passable, as authorized by court, in suit to stop use thereof, may be so exercised as to work great hardship on servient owner held correctible, without reversal of judgment.

4. Waters and Water Courses—Law Relating to "Water Course" Applicable to Stream Flowing Over Adjacent Lowlands in Times of Ordinary High Water.—Water course does not necessarily consist merely of stream flowing within banks forming channel in ordinary states of water, but stream accustomed to flow over adjacent lowlands in broader, but still definable stream, in times of ordinary high water, remains water course, and law relating thereto, rather than that as to mere surface water, is applicable.

5. Easements—Dominant Owner, Granted Right to Repair Passway, Held Not Authorized to Raise Level Above that of Servient Owner's Land.—Dominant owner, granted right to repair passway over adjoining land by judgment in suit to stop use thereof, held not authorized to raise level of roadway above that of adjoining land, so as to affect flow of natural water course crossed by passway.

J. H. SETTLE for appellant.

J. W. CAMMACK for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Affirming.

Appellant sought by this suit to stop appellee's use of a passway across her land, and to recover $500.00 damages which she claims to have sustained by appellee's placing metal, rocks, etc., on same. She was unsuc-

cessful, and the court adjudged him to be the owner of a passway across her land from appellee's gate at an elm tree on the south bank of Twin creek, across Twin creek and the appellant's land to the Owenton and Moxley turnpike on the north side of Twin creek. Appellee was given the right to repair and do work on the said passway to make it passable.

In 1854 one Jacob Hunter was the owner of such of the lands now owned by these parties as is affected by this controversy. In that year he sold 82 acres on the south side of his farm to W. D. Hunter. This 82-acre tract was separated from the highway by the intervening land of Jacob Hunter. As there appears to have been no other way for W. D. Hunter to have reached the highway, he necessarily had a way of necessity across the intervening lands of his grantor, Jacob Hunter. Bentley v. Hampton, 28 Reporter 1083, 91 S. W. 266; Brookshire v. Harp, 186 Ky. 217, 216 S. W. 379; L. & N. R. R. Co. v. Ward, 150 Ky. 42, 149 S. W. 1145; Skaggs v. Carr, 178 Ky. 849, 200 S. W. 27.

Jacob Hunter recognized this, and W. D. Hunter and those claiming under him have been traveling across this intervening land to the highway since 1854. This intervening land was then all uninclosed, and is almost wholly so even now. This travel seems not to have ever been confined to one particular trace, but one way was used more than the others. That way crossed this intervening land in a northeasterly course, but about the year 1887, owing to a change in the highway, that way was changed to one that crossed this intervening land in a northwesterly direction, and this way was used until about the year 1900, when appellee and the father and mother of appellant (they being then the owners of this intervening land) had a meeting at which it was agreed that the way should be changed and should run in what appears to us to be almost a due north course to the turnpike. No writing was entered into, but it was orally agreed that appellee's way to the public road should be fixed as above stated, and that appellant's parents should have a right to cross appellee's land. By this oral agreement, appellee got the passway which he had been claiming as a way of necessity, definitely located at a place satisfactory to him, and appellant's parents acquired the right to go through appellee's property. Both immediately began the use of these passways and to claim them as matters of right.

Appellant in her evidence in this suit complains of the appellee's having refused to allow her to pass through his property. He denies having done this. The witness Ogden says that there was dissatisfaction expressed by both parties relative to these passways from the very beginning; that the parents of appellant requested appellee to discontinue the use of the passway in question, but he claimed it as a permanent passway. He continued to so claim it, and appellant continued to claim the right to pass through appellee's property. This state of affairs had continued for more than twenty years before this suit was instituted. The right to a private passway may be acquired by continual use for fifteen years under a claim of right. Coburn v. Whirner, 5 Ky. Opin. 17; Settle v. Cox, 28 Reporter 510, 89 S. W. 534; Wray v. Brown, 155 Ky. 757, 160 S. W. 488; Brookshire v. Harp, 186 Ky. 217, 216 S. W. 379.

Moreover, at the time the oral agreement for this passway in question was made, appellee had a passway across the land now belonging to appellant, which was his as a way of necessity, and which he and his grantors had used for about half a century. It is true that the terminus of this passway upon the public road had been changed at one time, but only one of the termini was changed. The southern terminus of the passway from 1854 to 1887 is the same as the terminus of the passway used from 1887 to 1900, and is the southern terminus of the passway in controversy. In other words, all of these passways crossed appellant's land, and all began at the same point, but terminated at different points on the public road. These changes never amounted to the opening of a new passway; they were merely relocations of the old one. As each new way was opened, the use of the way theretofore used was discontinued. Hence, this case presents a different state of facts from the case of Bridwill v. Neltner, 173 Ky. 847, 191 S. W. 633.

The present passway is much shorter than either of the others, and possibly the appellant's parents may have been induced to make this change because of that fact.

In her petition the appellant complains of the appellee's use of this passway and of the repairs he has made upon it. She was unsuccessful in both complaints. Having considered the appellee's right to use the passway, we will now consider his right to make repairs. This passway crosses Twin creek, which is a natural

water course, and as the court below gave appellee the right to repair this passway so as to make it passable, it may be that this right to repair may be so exercised as to work a great hardship upon appellant, but this can be corrected without a reversal of this case. A "water course," in the legal sense of the term, does not necessarily consist merely of the stream as it flows within the banks which form the channel in ordinary states of water. When, in time of ordinary high water, the stream, extending beyond its banks, is accustomed to flow down over the adjacent lowlands in a broader, but still definable stream, it has still the character of a water course, and the law relating to water courses is applicable, rather than that relating to mere surface water. Town of Jefferson v. Hicks (Okla.), 102 Pac. 79, 24 L. R. A. (N. S.) 214 (quoting and adopting definition in Byrne v. Minneapolis & St. L. Ry. Co., 36 N. W. 339, 38 Minn. 212, 8 Am. St. Rep. 668).

This right to repair means that the appellee may, by placing stones or other road material in this passway, make of it a smooth and solid roadway, but it does not give him the right at any point in this valley to raise the level of this roadway above the level of appellant's adjoining land. If he plans to use stone or other metal in making this repair, it may be necessary for him to remove a portion of the soil before laying down the stone or other metal, for he must not build this roadway above the natural grade of the adjoining land, and if he doesn't do that, then the flow of the water down this valley will not be affected.

The judgment is affirmed.