## Purcell v. Brown.

(Decided March 27, 1925.)

### Appeal from Daviess Circuit Court.

1. Easements—Burden on Landowner to Show Use of Passway Permissive After Continuous Use for over 60 Years.—Where evidence showed that passway had been used continuously by the public for over 60 years, burden is upon landowner to show that use of such passway was permissive.

2. Easements—Evidence Held Not to Overcome Presumption of Use of Passway for Many Years as Matter of Right.—Evidence held

not to overcome presumption that use of passway for many years by the public was as a matter of right.

TANNER W. JETT, FLOYD J. LASWELL and W. FOSTER HAYES for appellant.

LOUIS. I. IGLEHART for appellee.

Opinion of the Court by Judge Dietzman—Reversing.

The appellee having obstructed a passway over his property which had theretofore been used by appellant and others, appellant brought this suit to enjoin the appellee from so obstructing that passway. The lower court dismissing the petition, appellant appeals.

From the evidence it appears that appellant and appellee own adjoining tracts of land. The appellant's property now abuts on its eastern side a county road known as the Boetler road. The passway in question runs from the west side of appellant's property in a westerly direction through the middle of appellee's property to the Pleasant Valley road, and the distance from appellant's property to the school, church and mail route is about. two miles shorter through this passway than by going around by the Boetler road. Appellee's land, over which this passway crosses, has been cleared for a great number of years. The passway runs in part between appellee's house and his barn and through a stock lot, where gates have been maintained for a great number of years to confine the stock. Another gate has also been maintained across this passway on the division line between appellants, and appellee's property, and possibly there has been still another gate somewhere along the road; but none of these gates have ever since their erection been locked or nailed up. There is no dispute concerning the fact that this passway has been in existence for as much as 60 years last past. It is true that in the late 70's or early 80's, at which time the Boetler road above mentioned was not in existence, and at which time appellant's property was owned or in the possession of a son of one W. H. Dawson, who then owned appellee's property, a lane, known as the Dawson-Newsom lane, was established running along the north boundary of both appellants, and appellee's land, which lane served as an outlet to the Boetlers and others to the Pleasant Valley road. It is not certain from the evidence whether or

not a fence was then erected across the passway in controversy where it leaves what is now the appellant's property and enters what is now appellee's property. If so, it is clear that the fence was one the bars of which could be let down for passage and it was not long thereafter before a gate was put at this point and the public continued to use, and in fact never ceased to use, the passway in controversy, although, of course, not in such large numbers as when there was no Dawson-Newsom lane. The Dawson-Newsom lane was abandoned about 1885, at which time the Boetler road seems to have been established, and thereafter down to the beginning of the present trouble the passway in controversy has been continuously used by those in possession of appellant's land and the public generally that had occasion to go that way without hindrance, let or objection. In the case of Smith v. Pennington, 122 Ky. 355, 91 S. W. 730, the rule was laid down concerning these passways as follows:

"A grant of a right of way by prescription will be presumed from an uninterrupted, unexplained, adverse use of such a nature as to indicate a claim of right, for a period of 15 years or more, and . . . it is not necessary that the person claiming the passway should show by positive testimony that he claimed its use, as a matter of right, . . . the burden is upon the landowner, after such long continued use of his premises, to show that the use was merely permissive, and the unexplained use of a passway over another's land for 15 years creates the presumption that the use is adverse. . . . When the proprietor undertakes to close the passway the burden is on him to show that the use was merely permissive, and to explain away the presumption that its uninterrupted enjoyment for more than 15 years was not exercised under a claim of right."

In the instant case the use of this passway has been established as extending over 60 years. It is shown that this passway was not entirely abandoned or its use interrupted by the establishment of the Dawson-Newsom lane, and that since the abandonment of this last lane in 1885 or 1886 the use has continued down to the present obstruction. This being true, the burden shifted to appellee to show that the use of this passway was permissive. On this issue, appellant produced 13 witnesses, most of whom ranged in age from 50 to 70 years. They

testified that this passway had been in existence as long as they could remember. Most of these witnesses also testified that the passway was used as a matter of right, openly and notoriously, and as any other public road or established passway is used. No one of them had ever heard of any one asking permission of the owner of the servient tenement to use the road or of any such permission being given or refused, or of any objection being raised as to the use of the road. It is true that one witness, Baker, testified that he had heard in a roundabout way that Mrs. Connor, who was at one time the owner of appellee's land, had become angry with him and said she was going to stop him from using the road, but it went no further than this. This incident, if it happened, occured only about eight years before this suit was brought and long after the road had become established.

Appellee produced seven witnesses, including himself, and he knew so little concerning the character of the use of this passway that his testimony is valueless on this point. These witnesses were introduced in the effort to establish the permissive character of the use. They all admit that the passway has been there for all of these years and that it has been used generally by the public, but they state that they always regarded this use as permissive. Analyzed, their testimony comes to this: In the family of Mr. Dawson, appellee's remote vendor, it was generally understood that the use was permitted as a neighborly kindness; and at times when Mr. Dawson was seated in his home, especially on Sundays, he would grumble at the people passing over the passway, but he never went out and stopped them or raised any objection openly to the public. It is true that about 30 years ago one witness, C. O. Evans, asked permission to haul some heavy lumber over this passway, and on another occasion when the witness, Horn, who later became the son-in-law of Mr. Dawson, was hauling a number of poles over the land Mr. Dawson remarked to him that the ground was pretty soft for such heavy hauling, which remark Mr. Horn interpreted to mean an objection on the part of Mr. Dawson to the hauling. It is also true that the witness, Newsom, testified that while the Dawson-Newsom lane was open he once asked permission to go over the passway in controversy. On this vague and uncertain testimony, appellee seeks to establish the proposition that the use of the passway was permissive and to over-

come the presumption that its use at least since 1885 or 1886, when the Dawson-Newsom lane was abandoned, has been other than adverse. It is obvious that appellee must fail in this effort.

On its facts, the instant case is exceedingly similar to the case of Brookshire v. Harp, 186 Ky. 217, 216 S. W. 379. In this case, it appeared that in the effort on the part of the owners of the servient tenement to show that the use of the passway in question was permissive, witnesses were introduced who stated only in a general way that they regarded the use as permissive but who mentioned no fact indicating that the use was of that character, nor did they give any circumstances as forming a basis for their conclusion, except perhaps occasional objections which the owners of the servient estate made to the use. It appeared further in this Harp case that gates had been erected over the passway and that since the inception of its use, a public road had been opened along the lands of the dominant tenement. This court on these facts said that the permissive character of the use was not established, and that the owner of the servient tenement had not discharged the burden resting upon him to overcome the presumption of the adverse nature of the use.

We are unable to distinguish the instant case from the Brookshire case, and as the passway here in question has been used at least since 1885 or 1886 openly and notoriously by the public generally without any idea on the part of such public that the use was other than as a matter of right, the general testimony of appellee as to the permissive character of the use, the sporadic incidents of permission asked, and the presence of the gates does not overcome the presumption that such use was as a matter of right.

It follows then that the appellant was entitled to the relief he sought, and the judgment of the lower court is reversed, with instructions to grant the appellant the injunction asked for in his petition.

Judgment reversed.