## City of Harlan v. Peaveley, et al.

(Decided May 4, 1928.)

### Appeal from Harlan Circuit Court.

1. Municipal Corporations.—Usually, no private action will lie against municipal corporation for damages sustained in consequence of its neglect to perform a public or governmental duty, or in consequence of its officers' or agents' trespasses or misfeasances in performance of such duty, whereas it is civilly liable for damages resulting from acts done in its private municipal capacity, that is, in management of property and rights voluntarily assumed for its own advantage or profit as corporation, though inuring ultimately to benefit of its citizens.

2. Negligence.—City held not liable for death of child as result of burns received while playing about fire set to garbage pile on privately owned sandbar or island in river, on ground that maintenance of fire at such place was attractive nuisance.

3. Municipal Corporations.—City held not liable for death of child as result of burns received while playing about fire, set to garbage pile placed on privately owned sandbar or island in river by arrangement between owner and teamster not in city's employ, there being no showing that city had any connection with such pile or put it at such place, or that it was on property over which city had any control.

4. Municipal Corporations.—If city placed garbage pile on privately owner sandbar or island in river, it was engaged in discharge of governmental function, and hence not liable for death of child burned while playing about fire set to such pile.

5. Municipal Corporations.—A city acts in its governmental capacity as an arm of the government, and cannot be sued for injuries inflicted in performance of governmental functions for the same reason that the sovereignty cannot be sued.

C. B. SPICER for appellant.

G. J. JARVIS and W. T. DAVIS for appellees.

Opinion of the Court by Drury, Commissioner—
Reversing.

The city of Harlan seeks by this appeal to reverse a
$25,000 judgment recovered against it by the administra-
tor of Lela Peaveley. One cannot read the facts from
which this litigation resulted without being moved to
compassion. The deceased child, Lela Peaveley, lacked
about a month of being four years old when she died as
a result of burns received by her while playing about a
fire which had been set to a pile of garbage.

From the record, it appears that the terrain upon
which the city of Harlan is situated is hilly and moun-
tainous, and, as a result of the topography of the city
itself and its surroundings, some difficulty has been ex-
perienced in finding a place for the deposit and disposi-
tion of the garbage accumulating in the city. It seems
that one of the teamsters who did hauling in the city had
arranged with a Mr. Lewis to dump this garbage on a
piece of property belonging to him. This particular
place where the garbage was dumped appears to have
been near Clover fork of Cumberland river. Indeed, it
would appear to be within the water course itself, accord-
ing to the definition of that expression. Morgan v. Mor-
gan, 205 Ky. 545, 266 S. W. 35. Some refer to it as a
sandbar, some refer to it as an island, and there was some
evidence that the water at times got over it. The team-
sters who hauled the garbage to this place were not em-
ployed by the city, but were apparently private citizens
engaged in hauling for their living, and, when a citizen
had an accumulation of garbage, he would employ and
pay a teamster to haul it away for him.

The city had no connection with the garbage. When
the citizen paid the teamster, he had no further connec-
tion with it or concern about it, and the deposit of gar-
bage at this place was purely an act of the teamster for
which he alone was responsible. The only connection the
city was shown to have had with this garbage pile was
that certain of its policemen, and perhaps even its mayor,
on some occasions directed these teamsters to set it afire.
It sometimes happened that the city itself had garbage
to dispose of, such as paper and rags, sticks and trash
that had been gathered up from its streets, and, when
that was the case, it employed and paid these teamsters
to dispose of that, and that was taken to the same place,

and disposed of in the same way. Thus there is nothing in the evidence to show that the city had any connection with this garbage pile, or the fire thereat, further than that sometimes some of its garbage was taken there by the teamsters, and that the garbage was burned at the direction of some of its officials. On April 8, 1925, this little girl and other children were playing about this garbage pile. They had scratched and dug in it and had found some articles which they used in their play. There is something in the record to show that some money had been found in the garbage, some discarded toys, and the children had found some potatoes, which they had roasted in the fire. While so engaged, this little child's clothing became ignited, and, burning, burned her body to such an extent that she died the next day.

In Board of Trustees, etc. v. Schupp, et al., 223 Ky. 269, 3 S. W. (2d) 606, we called attention to the twofold character of municipal corporations, that is, to those things which it does that are purely municipal in character and those things which it does in what is frequently called its governmental capacity, or, in other words, those things which it does as an arm of the state government. Usually no private action will lie against a municipal corporation for damages sustained in consequence of its neglect to perform a public or governmental duty, or in consequence of the trespasses or misfeasances of its officers or agents in performance of such governmental duty, whereas it is civilly liable for damages resulting from acts done in its private municipal capacity, that is, in the management of property and rights, which it has voluntarily assumed for business purposes, that is to say, its own advantage or profit as a corporation, although inuring ultimately to the benefit of its citizens. See White on Negligence of Municipal Corporations, sec. 23. The boundary line between the governmental capacity of corporations and their purely private or municipal capacity has never been sharply defined, and, indeed, it would be quite difficult to do so. Courts have written many things in their efforts to draw the distinction, but there is no need for this court now to attempt to draw that line, because it is generally held that a city is in the exercise of a governmental function in the collection and disposition of garbage, ashes, and street sweepings, in the execution of health regulations, in the operation of a quarry to obtain material for street construction, etc. See White on Negligence of Municipal Corporations, sec. 24.

In City of Louisville v. Carter, 142 Ky. 443, 134 S. W. 468, 32 L. R. A. (N. S.) 637, it was held that no recovery could be had for an injury inflicted on an eleven year old boy who was run over by a wagon belonging to the street cleaning department of the city.

In the recent case of White v. City of Hopkinsville, 222 Ky. 664, 1 S. W. (2d) 1068, we held that a city, in the maintenance of a quarry to produce street material, was engaged in a governmental function, and that no recovery could be had against it for an injury received through its negligence while so engaged.

In the case of Snider v. City of High Point, 168 N. C. 608, 85 S. E. 15, we find a case much like this one. In that case, Addie Snider, a nine year old girl, was burned to death by playing about a garbage pile that had been accumulated and fired by the city's employees. A recovery was denied, the court saying in its opinion, and citing authorities in support thereof:

> "It is well recognized with us that unless a right of action is given by statute, municipal corporations may not be held civilly liable to individuals for 'neglect to perform or negligence in performing duties which are governmental in their nature,' and including generally all duties existent or imposed upon them by law solely for the public benefit."

The appellees, in support of their position, cite the case of Lampton & Burks v. Wood, 199 Ky. 250, 250 S. W. 980, wherein recovery was upheld for injuries received when a buggy was overturned by a pile of stones that had been left in the street, and it is argued that, since the city of Danville was held responsible for the injury in that case, therefore the city of Harlan should be held responsible in this case, but the duty of a municipality to maintain its streets in a reasonably safe condition for travel is one of the well-known exceptions to the general rule relieving a city of responsibility for its negligence while engaged in a governmental function. The same is true of the case of City of Louisville v. Hans, 167 Ky. 160, 180 S. W. 65. The case of Twyman's Adm'r v. City of Frankfort, 117 Ky. 518, 78 S. W. 446, 25 Ky. Law Rep. 1620, 64 L. R. A. 572, 4 Ann. Cas. 622, is cited, but it does not support appellee. On the contrary, it is favorable to the appellant, for the city was held to not be liable. He cites the cases of Clayton v. City of Henderson, 103 Ky. 228, 44 S. W. 667, 20 Ky. Law Rep 87, 44 L. R. A. 474; City of

Paducah v. Allen, 111 Ky. 361, 63 S. W. 981, 23 Ky. Law Rep. 701, 98 Am. St. Rep. 422; and City of Madisonville v. Hardman, 92 S. W. 930, 29 Ky. Law Rep. 253, in support of this judgment. In those cases we held the city was in the exercise of a governmental function. The first two cases were pesthouse cases. The last one was a sewage case, and these were suits for injury to property resulting from the location of pesthouses and the disposition of sewage. In those cases, the cities were held liable, but that liability was rested on the fact that, by locating these things where they did, they depreciated the value of the property of the claimants. That was, pro tanto, a taking of the property of the claimants, and hence they were entitled to a recovery under section 242 of our Constitution.

It is suggested that the maintenance of this fire at this place was an attractive nuisance, and that hence the judgment should be sustained, but, in the case of Von Almen's Adm'r v. City of Louisville, 180 Ky. 441, 202 S W. 880, a recovery was denied for a nuisance quite as attractive as this one.

Every one must regret the injury, suffering, and untimely death of this little girl, but, under the circumstances, no recovery can be had because it is not shown that the city had any connection with this garbage pile. It is not shown that the city put it there or that it was on property over which the city had any control, but, if it were established that the city had done this, then it would appear that in so doing the city was engaged in the discharge of one of its governmental functions, and no recovery could be had. A city acting in its governmental capacity acts as an arm of the government, and cannot be sued for the same reason that the sovereignity cannot be sued. We have stated that reason thus:

"The reason for exempting a municipality from damages for injuries inflicted in the performance of its governmental functions is one of public policy, to protect public funds and public property. Taxes are raised for certain specific governmental purposes; and, if they could be diverted to the payment of damage claims, the more important work of government, which every municipality must perform regardless of its other relations, would be seriously impaired, if not totally destroyed. The reason for the exemption is sound and unobjectionable."

O'Connell v. M. & P. Dist. Tel. Co., 167 Ky. 468, 180 S. W. 845, L. R. A. 1916D, 508.

The city's motion for a peremptory instruction, made at the close of the plaintiff's evidence, and renewed at the close of all the evidence, should have been sustained.

The judgment is reversed.