## Zellman et al. v. City of Philadelphia

*Albert T. Hanby* and *Hugh McAnany*, for plaintiffs.

*David J. Smyth,* city solicitor, and *John J. K. Caskie* and *Ward C. Henry,* assistant city solicitors, for defendant.

STERN, P. J., June 30, 1932.—In this case there was a verdict of $7500 for the boy who was injured and $237 for his parents.

The plaintiffs' statement of claim alleged that the City of Philadelphia maintained a lot of ground at Front Street and Oregon Avenue for the purpose of dumping refuse matter; that it permitted certain refuse to burn on the surface and underneath; that the lot of ground was maintained in such a way as to be an attraction to children; and that the minor plaintiff entering upon it was precipitated into the burning area beneath and severely burned.

The defendant has taken a rule for a new trial and filed a motion for judgment n. o. v., raising substantially three points for the consideration of the court in banc.

1. According to the testimony of the minor plaintiff and the boy friend who accompanied him at the time of the accident, they entered a lot of ground at the southwest corner of Swanson Street and Oregon Avenue, walked for a distance of about thirty feet along a road that ran parallel to Swanson Street and about five feet from it, and then turned into the dump and had proceeded a few steps, or about three feet, when the accident happened. This testimony would place the point of the accident over 500 feet east of the corner of Front Street and Oregon Avenue, which was the place of the accident set forth in the state-

ment of claim. According to the testimony of the minor plaintiff, the dump extended over the entire block from Swanson Street to Front Street south of Oregon Avenue, and there was other testimony which to some extent corroborated this, although the evidence on the point was not entirely clear. The defendant contends that because of the difference in the statement of claim and the testimony as to the place of the accident there was a variance between allegata and probata which precludes recovery. The defendant points out that the point fixed by the boys as being the place of the accident is located in a coal yard where the city did not do any dumping at all, although it did carry on dumping on the lots on Front Street south of Oregon Avenue.

While there is considerable force in the defendant's objection that it should not have been obliged to face at the trial an issue as to the happening of an accident 500 feet east of the place alleged in the statement of claim, especially where it might, if prepared, have been better able to show that if the accident happened at the point testified to by the boys the city could not have been responsible for the occurrence, nevertheless the court would not be disposed to enter judgment n, o. v. on this ground, but would rather be inclined to grant a new trial in order to enable both parties more clearly to develop the exact spot where the accident occurred and to establish the exact places where the city carried on its dumping operations. Since, however, for the reasons hereinafter stated, the court thinks it is necessary to grant the motion for judgment n. o. v. on the other points involved, no order will be made at this time in regard to the rule for a new trial, but the court will act thereon, if the case be appealed, after the appellate court shall have reviewed the present action of the court, or, in case no appeal is taken, then when the time for appeal shall have expired.

2. The defendant contends that the jury should not have been allowed to find that the dump constituted an attractive nuisance, but that the court itself should have ruled to the contrary. In our opinion, this contention must be sustained. The doctrine of attractive nuisance has never found as much favor in Pennsylvania as in many other jurisdictions. This is evidenced by such cases as Thompson v. B. & O. R. R. Co., 218 Pa. 444, and Zamaria et al. v. Davis, Director General, 284 Pa. 523; while some cases, for example, Mullen v. Wilkes-Barre Gas and Electric Co., 38 Pa. Superior Ct. 3, which at first blush would seem to dispute this statement, are distinguishable by the fact that the evidence there was sufficient to establish a permissive playground, and hence the implied invitation to children to enter on the land was based upon previous use or custom and not merely upon the lure of an attractive nuisance.

Be this as it may, however, we know of no case in Pennsylvania which has gone so far as to hold that a dumping ground for ashes constitutes an attractive nuisance, so as to impose liability on the theory of the so-called "turntable cases." There is no allegation nor any proof in the present case that the dump had taken on the status of a permissive playground, the only evidence being that on about five previous occasions the boys had wandered over the dump, and such testimony falls far short of the degree necessary to fasten constructive knowledge upon a property owner that his property is being subjected to use as a playground by the children of the neighborhood. The tendency in all jurisdictions is to limit the attractive nuisance doctrine rather than to extend it, and we would be extending it if the present verdict were to be upheld.

The City of Philadelphia was not the owner nor the tenant nor the occupier of the ground where the dump was located. It bought and paid for the license or privilege of dumping ashes there, and once the ashes were dumped the city did not "maintain" the dump in any way. It merely had employes present when the dumping was done, in order to level off the ashes so that they could be spread

around to better advantage. At a later period its employes sprayed the ashes in summer time to prevent fires, but this was nothing more than the ordinary exercise of its police power to prevent the spreading of conflagrations. The city had no title to the land nor to the ashes deposited there, and after the ashes were placed on the ground the city had no further interest in the transaction. Even, however, if the city itself had been the lessee or occupant of this land and had placed the ashes on its own ground and "maintained" them there, this, in our opinion, would not have constituted an attractive nuisance. The ash dump was no more likely to be attractive than land on which there had been dumped dirt or any other material, or, indeed, than the land itself in its original condition. It is true that the ashes proved to be dangerous to the minor plaintiff by reason of the slumbering fire which existed at the point of the accident, but the element of danger or of negligence in causing or permitting it to exist has no bearing upon the question whether the dump in itself was likely to be "attractive" to children. Of course, any object may attract children, but, even under the most extreme view of the attractive nuisance doctrine, there could not be liability unless the object were so unusually and so probably "attractive" that the person who caused or maintained it should, in the exercise of ordinary judgment and prudence, have realized that it would be likely to lure children to the premises and that it would thus impose the duty upon the owner of using due care that injury to them might be reasonably avoided.

In the case of Harlan v. Peaveley, 224 Ky. 338 (1928), it was held, in a case practically identical with the present one, that an ash dump did not constitute an attractive nuisance, and, therefore, that the owner was not liable for an injury to a child who wandered on the dump.

3. The defendant contends that it is entitled to judgment n. o. v. for another reason, namely, that even if it were guilty of negligence, it was engaged in the performance of a purely governmental function and is, therefore, immune from liability. On this point, also, we agree with the defendant. It was held in Scibilia v. Philadelphia, 279 Pa. 549, that the gathering and disposal of refuse and ashes constitute the exercise of a public or governmental function, and the law in Pennsylvania, as indeed generally elsewhere, is undoubtedly to the effect that there can be no recovery by a person injured by the negligence of an employe of the city engaged in collecting or disposing of ashes or other refuse. Even if, therefore, the city negligently placed ashes upon this plot of ground while they were still smouldering, it could not have been held liable for such negligence. The plaintiffs seek to avoid this doctrine by arguing that where a municipality creates or maintains a nuisance it is liable therefor, even though the creation or maintenance of such nuisance be in the course of the exercise by the municipality of a governmental function: Brinton v. School District of Shenango Township, 81 Pa. Superior Ct. 450. In the present case, however, apart from the fact that the statement of claim is framed on the charge of negligence and not of nuisance, the court is of opinion that the case was not one of nuisance, in that the city had a right to dump the ashes upon the ground, having paid the lessees for that privilege, and the ashes thus deposited were not in any way a nuisance to anybody except to someone who, like the minor plaintiff, might trespass upon the ground where the ashes were located. A condition maintained upon one's own property which is not harmful to owners or occupants of adjoining land by reason of noise or bad odors or impure air which it disseminates, but which might be dangerous or obnoxious only to trespassers to whom no duty is owed, does not constitute a nuisance within the legal meaning of that term. If the City of Philadelphia did anything wrong in the present case it was in negligently depositing burning ashes upon the dump. Had the effect of this been

that such ashes were carried to adjoining properties and set them afire, it might have been argued that in that sense the dump or the act of dumping constituted a nuisance, but under the facts of the present case the dump was not a nuisance as to the trespassing minor plaintiff, nor, as far as the evidence disclosed, to anybody else. There being, therefore, no possible charge but that of negligence, the city could not be held liable, because whatever negligence may have occurred was in the course of the performance of a governmental function.

The minor plaintiff in this case suffered a dreadful injury, and being at the time of the accident only nine years of age, he is particularly deserving of sympathy, but we cannot, because of this, make the city pay for a result that ensued from the natural but unfortunate exercise of a boyish impulse.

The defendant's motion for judgment n. o. v. is granted and an exception allowed to the plaintiffs.