## Rees et al. v. Dixon et al.

Sept. 29, 1942.

C. R. Barker and E. E. Barton for appellants.

Silas Jacobs for appellees.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

This appeal involves the question of whether or not appellees are entitled to a passway by prescription over the land of appellants. The basic facts are these:

Clinton Dixon, father of appellees, purchased a farm in Bracken County, Kentucky, in 1867 and lived on it until 1887, when he purchased another farm and moved to it in the same year. Richard T. Gosney owned a farm between the two farms owned by Dixon and, it be-

ing the nearest route between Dixon's two farms, he passed over the land of Gosney when going from his home farm to the other one. It appears that this custom continued during the lifetime of Dixon, who died in 1902, and his heirs continued to pass over the Gosney land when en route between the two Dixon farms.

After the death of Gosney, his farm was sold by the Bracken Circuit Court and bid in by the appellants and they have occupied the farm by tenants since they purchased it. After the death of Dixon's widow in 1929, appellees had some negotiations with appellants to sell to them a fifty-acre farm owned by them (appellees), but they did not agree on the price. In the spring of 1938 Clay Askins offered to purchase appellee's farm upon condition that a passway could be secured over the Gosney farm. Appellees talked to appellants about purchasing a passway over the Gosney farm in order to sell their fifty-acre farm to Askins. Appellants refused to sell the passway through the farm, and appellees then asserted that they, Dixon heirs, owned a passway over the Gosney land and soon thereafter appellants put a lock on a gate across the farm road. It appears that this was the first controversy or dispute that had arisen concerning the passway over the Gosney land, which passway had been in use since 1887. Appellees then instituted this suit seeking a judgment of the court establishing their right to continue the use of the passway over appellants' land and obtained a restraining order from the clerk of the Bracken Circuit Court restraining appellants from obstructing the passway or otherwise interfering with their use of it. Issue was joined by subsequent pleadings and the evidence taken partly by deposition and partly in open court, and the chancellor found and adjudged that appellees have a prescriptive right of passway over the land of appellants and granted a permanent injunction enjoining appellants from interfering with appellees' right of passway over the said land. Appellants excepted and prayed an appeal to this court which was granted.

The only question presented for determination is the sufficiency of the evidence to sustain the finding of the chancellor. Three sons and two daughters of Gosney testified for appellants with reference to the use of the passway by Clinton Dixon and his heirs over the land of their father, R. T. Gosney. Two of the sons testified

that the Dixons passed over the Gosney land by permission of their father and they never heard of the Dixons claiming any right of passway over their father's farm. One of the sons further stated that on one occasion when Mr. Dixon started through their father's farm with a wagon his father stopped him because the ground was too wet and Dixon turned and went back. Another son testified that the Dixons traveled over their father's farm by permission and that his father stopped Mr. Dixon from traveling over the farm four or five times, from a week to several weeks at a time. These witnesses also testified to other minor circumstances which might tend to corroborate the statements about the passway being permissive. One daughter of Mr. Gosney gave testimony similar to that of the sons, and another daughter rather contradicted her brothers and sister, stating that the Dixons went through her father's farm when they wanted to and that her father did not say anything to them. A number of other witnesses who lived in the community and knew Dixon and Gosney gave testimony for the appellants. These witnesses testified to circumstances which tend to some extent to corroborate the evidence of the Gosney heirs.

The evidence for appellees is in sharp conflict with the evidence for appellants. The substance of the evidence of appellee W. C. Dixon is that his father and family had lived on the fifty-acre tract of land, which is adjacent to the Gosney land, since 1887 and that his father, Clinton Dixon, and the family had continuously used the passway in question without let or hindrance since that time and without any objections or controversy between the Dixon family and the Gosney family or with appellees until this controversy arose in 1938. Frank Young, a son-in-law of R. T. Gosney, testified that he had known the passway in question for 47 years and had traveled it during that time, and while working for Dixon he saw the Gosneys almost daily and never heard or knew of any dispute concerning the passway until the present controversy, and that 47 years ago the road now traveled was well marked and defined; that sometimes they traveled by foot and sometimes they had a team and they went through gates and bars and that it is still a traveled passway and at about the same place.

Mrs. C. J. Ernest, a daughter of Clinton Dixon, testified that she had known the passway for about sixty

years and that her father, brother and sisters have traveled the passway since she can remember and that they used the passway for all purposes, with their teams, wagons and sled, and that there never was any controversy concerning same. Ida Featherstone, another daughter of Clinton Dixon, gave similar testimony. She said that the Dixon family had always used the passway and they and R. T. Gosney were friendly and no controversy ever existed between them as to the right of the Dixon family to travel over the passway. Carl Buerkley and C. H. Lenox, the former being fifty years old and the latter fifty-seven years old, testified that they had known the passway in question since their boyhood and that the Dixon family traveled the passway and they never at any time heard any dispute concerning the same. It might be said that the testimony of these last two witnesses was to some extent of a negative nature, which ordinarily is not considered substantial evidence, but in the peculiar circumstances of the particular case we think their evidence has at least some corroborative effect on the testimony of the Dixon heirs and others who testified that there never was any controversy or dispute between the Dixon and Gosney families concerning the use of the passway.

Appellee W. C. Dixon testified in rebuttal that shortly after the death of Mrs. Dixon in 1929 appellee Rupert Rees proposed to him to purchase the fifty-acre tract of land in dispute and that he made an offer of $500 for the land; that neither at that time nor at any other time prior to 1938 did either of the appellees or any other person dispute the right of the Dixons to travel over the passway in question; that about the year 1938 Chess Askins offered Dixon $1,000 for the land in dispute, and when appellees heard about this they locked the gate to the Dixons and other persons using the passway and in order to settle the controversy or dispute he offered to pay appellees $100 for a passway but the offer was made only to settle the dispute and to avoid litigation; that never to his knowledge did the Gosneys dispute the right of the Dixons to travel over the passway in question, and that if it be true that Mr. Gosney ever made any objections to the right of the Dixons to use the passway such objections were made more than forty years ago, but no objections had been made within the last fifteen years or longer. This concludes a brief sum-

mary or substance of the evidence of the respective parties.

It appears, however, that the passway over the Gosney land has been shifted from place to place a number of times. It is in evidence that the passway originally used by Clinton Dixon over the Gosney land was through timber land and after Gosney cleared the land of timber for the purpose of cultivating the land the passway was then shifted to another point, and for similar reasons it was shifted a time or two thereafter. But it appears that these changes were made with consent of the parties and without any objections by either. It is the rule that when a passway is changed from one point to another over the same land, and that the new passway substituted for the former one serves the same purpose, such change is not conclusive evidence that the use was permissive, and the erection of gates across the road is not inconsistent with the acquisition of an easement. Bryant v. Penn et al., 280 Ky. 428, 133 S. W. (2d) 521, and cases therein cited. In Crigler et al. v. Newman et al., 91 S. W. 706, 29 Ky. Law Rep. 27, the court held that the fact that a few changes in the course of a road were made for convenience and by consent did not destroy the right of the person entitled to the use of the road.

Conceding that changes were made in the passway as claimed by appellants, yet under the authorities supra we do not think that such changes militate against the rights of appellees' claim of prescriptive right of a passway over appellants' land. Cox v. Blaydes, 246 Ky. 121, 54 S. W. (2d) 622.

It is also the rule that a long continued use of a passway makes it encumbent upon the owner of the servient estate to show the right of passway is permissive rather than prescriptive (Smith v. Pennington, 122 Ky. 355, 91 S. W. 730, 8 L. R. A., N. S., 149; Carter et al. v. Shrout et al., 185 Ky. 729, 215 S. W. 808; Cox v. Blaydes, supra), and it is encumbent upon the party claiming such prescriptive right of passway to introduce only slight evidence to sustain their claim. Childers et al. v. Groves et al., 194 Ky. 790, 240 S. W. 1057; Smith v. Fairfax, 180 Ky. 12, 201 S. W. 454; Stewart v. Brumley, Ky., 119 S. W. 798.

Referring again to the evidence, we find it to be so conflicting as to leave reasonable minds in doubt as to

the truth of it, and in such cases this court will not disturb the finding of the chancellor. Green v. Bryant, 287 Ky. 831, 155 S. W. (2d) 465. Many other cases of a similar nature might be cited, but this rule is to well known to the legal profession to require citations of authority.

For the reasons stated, the judgment is affirmed.